[No. B231729. Second Dist., Div. Eight. Apr. 12, 2012.]

In re ANA C. et al., Persons Coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY
SERVICES, Plaintiff and Respondent, v.
JOSE C., SR., Defendant and Appellant.

1318

**COUNSEL**

Darlene Azevedo Kelly, under appointment by the Court of Appeal, for Defendant and Appellant.

Andrea Sheridan Ordin, County Counsel, James M. Owens, Assistant County Counsel, and Kim Nemoy, Deputy County Counsel, for Plaintiff and Respondent.

Opinion

**BIGELOW, P. J.**—The current consolidated appeal arises from related proceedings which are being addressed together in the juvenile dependency court. In one proceeding, the dependency court sustained allegations that Jose C., Sr., had sexually abused the 11-year-old daughter of a cohabitant, and that the child's mother knew of that abuse but failed to take action to protect the child against the abuse. As a result, the court found the victim of the direct abuse, and her siblings in the family home, were at risk of physical and emotional harm, including a risk of sexual abuse. In the related proceeding, based upon the same evidence of sexual abuse involving the 11-year-old child, the court sustained allegations that Jose C., Sr., presented a risk of sexual abuse to his own adolescent sons who lived in the family home, and posed a risk to his own teenage daughter who lived with her mother. On appeal, Jose C., Sr., challenges the dependency court's findings that he poses a risk of emotional and physical harm and sexual abuse as to any and all of the children. He argues the findings are based on evidence which is incompetent, not credible and insubstantial. We affirm as to the children in the family home and reverse as to the child not living in the family home.

## FACTS

*The Family Backgrounds*

Jose C., Sr., and Angelica L. are the parents of Ana C., born in 1993, Jose C., Jr., born in 1998, and Eric C., born in 2000. The parents separated in 2003. Pursuant to custody proceedings in 2006, Ana C. went to live with Angelica L., while Jose C., Jr., and Eric C. lived with Jose C., Sr.

Esmeralda F. and a father whose whereabouts are not known are the parents of Kimberly A. (the sexual abuse victim), born in 1996, and Jacqueline A., born in 2002.

The two families became interrelated when Jose C., Sr., Jose C., Jr., and Eric C. moved into a family home with Esmeralda F., Kimberly A. and Jacqueline A. Together, Esmeralda F. and Jose C., Sr., had one child, Yesenia C., born in 2007.

*The Dependency Proceedings*

On June 9, 2010, the Los Angeles County Department of Children and Family Services (DCFS) received a referral, apparently from Kimberly A.'s school, alleging sexual abuse involving Kimberly A. The same day, a DCFS case social worker (CSW) spoke with the reporting party. The reporting party

stated that a friend of Kimberly A.'s had relayed that Kimberly A.'s stepfather (i.e., Jose C., Sr.) was forcing Kimberly A. to have oral sex with him when Kimberly A.'s mother was out of the family home. The CSW then interviewed Kimberly A. The CSW wrote down Kimberly A.'s statements as follows: "My father has touched me in my private parts. My father is Jose. The day that my father touched my private parts was at night after I turned off the television and I believe [it] was on a weekend because I did not have to go to school the next day. I don't recall the exact date of the incident but it might be November or December of 2008. My father touched my private when I was 11 years old. I was lying down on the sofa watching television and my father came out of his children's room. My father went to check if my mom was asleep and she was so he came over to my bed (which is the sofa). My father told me to turn around so I was on my right side and my back was towards my father. My father then got into the bed and lay on the side of me but I was not facing him. My father then grabbed me here (CSW observed that child pointed to her breast) then he touched my 'cosa' (when child would say 'cosa' she would point to vagina) over my clothes. My father asked me to, 'chupa me mi parte' (suck my private part). I told my father, 'no.' My father then began to take off my shirt then my shorts and then my underwear. . . . So the only thing that he left on was my pink bra. My father then sucked my vagina then he sucked my right breast. After he did that he just got out my bed and walked by to Jose and [Eric's] room. I put my clothes back on and just lay in bed. Soon my sibling Jacqueline came to sleep in the bed with me. Me and Jacqueline share the same bed in the living room. When father did this to me my mother was in her bedroom asleep with my sibling Yesenia and Jacqueline and Jose and [Eric] were in their bedroom. Nobody saw what my father did to me."

After the interview at school, the CSW took Kimberly A. to a local police station where she met with two officers. The written police reports of Kimberly A.'s statements disclose the following: Kimberly A. told the officers that the incident happened when she was 11 years old, on a December school night. She said her brothers were asleep and her sisters were in her parents' room. She was lying down on the sofa bed in the living room watching television when her stepfather lay down next to her. He fondled her breasts over her shirt with one hand while touching her vagina with the other. She said that he put his "private" in her "butt" for "two minutes." When asked what she meant by "private," she said it was his "thing" and pointed to her crotch area. She said her stepfather's act caused her to feel pain. Kimberly A. told the police officers that she did not say or do anything because she was scared and did not understand what was happening. She said that when her stepfather was done, he got dressed and went back to

his bedroom. After her stepfather left, Jacqueline A. came out of the parents' bedroom and lay down next to Kimberly A. to sleep, which was their normal sleeping arrangement. Kimberly A. said that she told her mother about the incident the next day, and her mother said that she would not let it happen again. Kimberly A. did not tell anyone about the incident until June 2010, almost two years after it allegedly occurred. Kimberly A. stated that she had not reported the abuse incident earlier because she did not want anything to happen to her stepfather.

Sometime later the same day, the CSW (accompanied by another social worker, and then by police officers) went to the family home, where they interviewed Esmeralda F., Jose C., Sr., Jacqueline A., Jose C., Jr., and Eric C. All of the family members denied that any abuse could have occurred and said that Kimberly A. was lying. Esmeralda F. told the CSW that Jose C., Sr., had not sexually abused any of the children, and that Kimberly A. tended to "lie about things." Esmeralda F. said that Kimberly A.'s teacher had twice reported hearing Kimberly A. telling classmates about sexual actions that Jose C., Sr., and Esmeralda F. had engaged in, but because the adults never did anything sexual in front of the children, Esmeralda F. did not know where Kimberly A. was getting her information. Esmeralda F. denied that Kimberly A. had ever told her that Jose C., Sr., had touched her private parts. Esmeralda F. also said that she had never witnessed Jose C., Sr., touching Kimberly A. inappropriately.

Jose C., Sr., denied Kimberly A.'s allegations, stating: "I take all the children to school in the morning. I have never done something like that to Kimberly or any other children. I have never acted inappropriate with Kimberly. I have never sexually abused any child or adult." .

Kimberly A. and her sisters, Jacqueline A. and Yesenia C., were detained. Jose C., Sr., was apparently arrested at the family home.[1] Also on the same day, the CSW removed Jose C., Jr., and Eric C. from Jose C., Sr.'s home, and took them to the home of their mother (Angelica L.).

Kimberly A. received a forensic medical examination. The examiner wrote down Kimberly A.'s statements during the examination as follows: "Dad did it to me, long time ago—he touch me here (pointing to breast) under my clothes he also touch me here (pointing to abdomen + back). He put his thing (penis) in my front (pointing to vaginal area) + back (pointing to anal area) 1x on the sofa at home and mom was in other room. I told mom but can't

---

[1] The record includes materials indicating that the district attorney declined to file a criminal action based on an assessment that the evidence was not sufficient to obtain a conviction.

remember what she said." The examiner concluded that Kimberly A.'s examination was normal, and could neither confirm nor exclude sexual abuse.

DCFS filed a petition on behalf of Esmeralda F.'s children with the absent father, Kimberly A. and Jacqueline A., and her child with Jose C., Sr., Yesenia C., based on allegations that Jose C., Sr., had sexually abused Kimberly A. when she was 11 years old, and that Esmeralda F. had failed to protect Kimberly A. from the sexual abuse.

A CSW interviewed Ana C., then almost 17 years old, in her family home. Ana stated that she had lived with her father until she was 13 years old, and that he never abused or molested her. During this same visit, the CSW also interviewed Jose C., Jr., then 11 years old. Jose C., Jr., denied the sexual abuse allegations and said he did not know why Kimberly A. accused his father, but it was not true. He wanted to have contact with his father. The CSW also spoke to Eric C., then nine years old. He too denied allegations of sexual or physical abuse, saying, "My dad never touch me." He said he did not know why Kimberly was saying this, but it was not true. Eric C. also wanted to live with his father. Last, the CSW interviewed Angelica L. She told the social worker that her children had denied that their father had ever touched them improperly, and that they did not believe he would do anything to Kimberly A.

DCFS filed a petition on behalf of Jose C., Sr.'s children with Angelica L., that is, Ana C., Jose C., Jr., and Eric C.

The CSW interviewed Esmeralda F. again at the family home. She repeatedly denied that Kimberly A. had ever said anything to her about father touching her, and that she first learned of it from the social worker.

On July 2, 2010, a DCFS dependency investigator (DI) interviewed Kimberly A. in her foster placement. Kimberly A. "appeared to be nervous and was rubbing her hands throughout the interview." During the interview, Kimberly A. referred to Jose C., Sr., as her "stepdad." Kimberly A. told the DI that the incident occurred 9:00 p.m. on a Sunday, on the sofa bed, when Kimberly A. was 12 years old. Kimberly A. told the DI that her stepdad had removed her clothing, and that he was also unclothed. Her stepdad then touched and licked her breast (pointing to that area) and her vaginal area (also pointing). He put his "middle part on the front and on the back" and "[i]t felt hard." The incident lasted "2-minutes." She identified his "middle part" by pointing to the penis area of a stuffed animal. When asked what stepdad told her to do, Kimberly A. said "turn around" but she could not

remember what she did in response. She said that stepdad had asked her to lick it (referring to his "middle part") but she had said "no." Kimberly A. said the abuse occurred one time. She said that her mother was "[i]n her room" during this incident. Kimberly A. also told the DI that she had told her mother about this incident and her mother told her stepdad "[t]o not do that." When asked if her stepdad touched her again, Kimberly A. said, "no," but then said that her mother "saw one day." When asked what her mother saw, Kimberly A. said, "Doing it to me." Kimberly A. added that her mother also saw her stepdad kissing Kimberly A., and told him "[t]o stop doing it." Kimberly A. also told the DI that Jacqueline A. was present and saw "when my step-dad put his middle part on my front and back." According to Kimberly A., Jacqueline A. said nothing at the time, but later told their mother.[2]

Also on July 2, 2010, the DI interviewed Jacqueline A. at her foster placement. Jacqueline A. referred to Jose C., Sr., as her "dad" during the interview. When asked about her dad sexually abusing Kimberly A., Jacqueline A. said "no." After the DI spoke to Jacqueline A. about the "difference between a good touch and a bad touch," the DI asked Jacqueline A. whether her dad had touched Kimberly A. in a "bad way." Jacqueline A. said yes, but would not respond at all to the DI's further questions. When asked if she had seen her dad touch Kimberly A., Jacqueline A. stated that her dad had once touched Kimberly A. on her back in the kitchen, and Kimberly had asked him to stop. When the DI directly asked Jacqueline A. if she was not talking about Kimberly A. allegedly being sexually abused because she wanted to go home to her mother, Jacqueline A. said yes.

The two petitions were combined for adjudication, which took place in January 2011. At that time, DCFS reports, which included the contents of the interviews that are summarized above, were admitted into evidence. Further information in the reports showed that Kimberly A. is a special education student, with a diagnosis of moderate mental retardation, and attended special day classes. School district reports apparently written in February 2010 stated that Kimberly A.'s disability significantly impairs her ability to read and write; she is able to read "some high frequency words and sight words at a high first grade level," and is "able to decode single syllable words."

---

[2] In her statements to the CSW on June 9, 2010, Jacqueline A.'s denials of abuse had been unequivocal. "Nobody has ever touched me here, here or here" (pointing to vagina, breasts and buttocks on a body chart). "I have never seen my father touch Kimberly here, here and here" (again pointing to vagina, breast and buttocks on a body chart). "Kimberly has never told me that my father has touched her here, here and here" (again pointing to vagina, breast and buttocks on a body chart). Jacqueline A. "felt safe" living in the family home. She was "not afraid of anybody."

Two witnesses were called to testify at the adjudication hearing—Kimberly A. and her then third-grade sister, Jacqueline A. Prior to Kimberly A.'s testimony, her counsel noted to the dependency court that her individual education plan classified her as "moderately mentally retarded" and asked the court to "qualify" her to testify. After Kimberly A. answered questions about her name and age, the court questioned Kimberly A. to discern whether she understood the difference between telling the truth and lying. At the conclusion of the inquiry, the court found that Kimberly A. was "qualified" to testify because she "understands between right and wrong" and "[u]nderstands the requirement to testify truthfully."

During her testimony, Kimberly A. testified that Jose C., Sr., touched her "a lot" of times, and that her mother had seen one of those times. She also testified that she told her teacher what her stepfather had done. She could not remember details that were included in the reports of her interviews. She testified she never told friends about the abuse. She did not like Jose C., Sr.

After a short series of questions in which Jacqueline A. stated that she did not know what it means to tell lies, the court ruled that Jacqueline A. did not qualify to testify.

At the end of the adjudication hearing, the court made the following statements regarding the evidence, and, in particular, on Kimberly A.'s testimony (both in interviews and in the courtroom) regarding the allegations in the petitions:

"I did have the opportunity to review all the appropriate documents which have now been admitted into evidence. I had the opportunity to also hear Kimberly's testimony, observe her while testifying, as well. It's not to be so unexpected her testimony won't be totally consistent throughout the numerous interviews she went through. I don't know the extent of her mental health impairments. There's no evidence to describe the extent of it, how it might affect her recollection or her credibility. But I think there's some indication while observing her, there's some impairment. But I don't think it affected her credibility.

"I think she was pretty consistent in describing the actual event that she described in all her instances. I do think at the time of the incident—I don't think there were any other witnesses who observed. I think there were other incidents that occurred. She was not really clear about those. They apparently include some touching. Another incident where her father was on top of her, when mom, according to her, was present and did intervene, I believe, at that

time. But I do not think her recollection of the instance that brings us here today has been disproved. I think she has proven [it] to the court.

"I had the opportunity to observe her. You can literally see the pain in this young lady. [The] [t]rauma she has been exposed to. I'm convinced by [a] preponderance of the evidence that the incident occurred as charged and alleged in the petition and [I] will be sustaining the petition."

The court sustained the allegations under Welfare and Institutions Code section 300, subdivisions (b), (d), and (j), as pled as to Kimberly A., Jacqueline A. and Yesenia C. In the related case, the court sustained allegations under section 300, subdivisions (b) and (d), as pled as to Ana C., Jose C., Jr., and Eric C.

In March 2011, the court issued disposition orders. Jose C., Sr., filed a timely appeal.

## DISCUSSION[3]

I.  *Competence to Testify*

Jose C., Sr., contends the dependency court's findings must be reversed because the court erred in finding Kimberly A. was competent to testify. We disagree.

The record does not show an objection by Jose C., Sr., that Kimberly A. was not competent to testify. To preserve a claim on appeal that a witness was not competent to testify, a party must have objected on that ground in the trial court. (See, e.g., *In re S.C.* (2006) 138 Cal.App.4th 396, 420 [41 Cal.Rptr.3d 453], citing *People v. Cudjo* (1993) 6 Cal.4th 585, 622 [25 Cal.Rptr.2d 390, 863 P.2d 635].) We reject Jose C., Sr.'s argument that we should address his claim even in the absence of an objection below. The issue of a witness's competence largely involves an evaluation and weighing of the evidence concerning the issue. This type of fact-based issue presents an ideal circumstance for applying the forfeiture rule. When an objection is made, a record can be developed which gives the trial court and any reviewing court a meaningful basis upon which to consider the issue. When an objection is not made, a record for meaningful review is not available.

---

[3] Jose C., Sr., makes the same arguments in both appeals. We address his arguments together in this discussion.

Jose C., Sr.'s reliance on *In re S.B.* (2004) 32 Cal.4th 1287 [13 Cal.Rptr.3d 786, 90 P.3d 746] in support of his argument for conducting a review without an objection is misplaced. In *S.B.*, the issue on appeal was a legal issue— whether the dependency court may delegate to the child's legal guardian the authority to decide whether a parent may visit a child—which had divided the Courts of Appeal. (*S.B.*, at pp. 1293–1294.) *S.B.* did not involve forfeiture in the context we face, where the issue is the suitability of review concerning a fact-driven issue in which the trial court exercises its discretion.

Even assuming that Jose C., Sr.'s claim of error regarding Kimberly A.'s competence to testify is not waived, we are not persuaded that the trial court erred. A trial court's ruling on a witness's competence to testify is reviewed for abuse of discretion. (See, e.g., *People v. Montoya* (2007) 149 Cal.App.4th 1139, 1149–1150 [57 Cal.Rptr.3d 770].) A trial court abuses its judicial discretion when it renders a ruling that is absurd or beyond the bounds of reason, all of the circumstances considered. (*Id.* at p. 1150.) Here, the dependency court questioned Kimberly A. before she testified, and then determined she was qualified to testify. The entirety of her testimony on the subject, which follows, bears this out:

"Kimberly A., a minor, called as a witness by the father, was sworn, examined and testified as follows:

"THE COURT: I'm going to have you face the lady who is standing. Can I have you raise your right hand. Which one is your right hand? Look at her for the moment. Raise your right hand.

"THE CLERK: Do you promise to tell the truth, the whole truth and nothing but the truth?

"THE WITNESS: Yes.

"THE COURT: Okay.

"THE CLERK: Could you please tell me your name?

"THE WITNESS: Kimberly.

"THE CLERK: Last name?

"THE WITNESS: [A.]

"THE CLERK: Thank you.

"THE COURT: How old are you?

"THE WITNESS: 14.

"THE COURT: Do you go to school?

"THE WITNESS: Yes.

"THE COURT: What grade are you in?

"THE WITNESS: Nine.

"THE COURT: Ninth grade. Let's try that again. Kimberly, you know that we want you to tell us the truth. You understand that?

"THE WITNESS: Yes.

"THE COURT: Do you know what that means, to tell the truth?

"THE WITNESS: No.

"THE COURT: Do you know what it means to tell a lie?

"THE WITNESS: Yeah.

"THE COURT: You do. This, what I have in my hand is called a pen; is that right?

"THE WITNESS: Yes.

"THE COURT: That's the truth. If I told you it was a baseball, that would be true or that would be a lie?

"THE WITNESS: A lie.

"THE COURT: That would be a lie. You know it's wrong to tell a lie?

"THE WITNESS: No.

"THE COURT: Do you know that now?

"THE WITNESS: Yeah.

"THE COURT: What happens to you if you tell lies?

"THE WITNESS: Get in trouble.

"THE COURT: Okay. Has anybody told you that they want you to say anything when you come in today?

"THE WITNESS: No.

"THE COURT: Are you going to tell us the truth about whatever it was that we ask you about?

"THE WITNESS: Yes.

"THE COURT: Are you nervous?

"THE WITNESS: Yeah.

"THE COURT: A little bit. That's okay. Everybody is when they are asked to come in. Even the attorneys and the judge sometimes gets a little bit nervous, too. You understand I'm the judge in this case?

"THE WITNESS: Yes.

"THE COURT: Do you have any questions you want to ask?

"THE WITNESS: No.

"THE COURT: Counsel, do you want to inquire any further?

"[COUNSEL]: No. [¶] . . . [¶]

"THE COURT: Anyone else? [¶] I think she's qualified. I think she understands between right and wrong. Understands the requirement to testify truthfully."

At the end of the adjudication, the court stated its reasons for believing that Kimberly A. had been abused. The record refutes a conclusion that the dependency court abused its discretion.

To avoid this conclusion, Jose C., Sr., argues that "no reported case" supports the proposition that a trial court may find "a mentally retarded or insane person competent based solely on the witness's answers . . . to a few questions, of which two were answered incorrectly." He also suggests that the

published cases demonstrate the most commonly accepted manner for determining competence is "evidence from . . . mental health professionals." Jose C., Sr.'s unsuccessful search for a case denying a witness's competence upon facts exactly or nearly exactly like his is not persuasive. The test on appeal is abuse of discretion, and we find none here.

## II. *Credibility*

Jose C., Sr., contends the dependency court's findings must be reversed because the court erred in finding Kimberly A. was a credible witness. We disagree.

We may not substitute our assessment of the credibility of a witness in place of the credibility assessment of the trial court. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318 [27 Cal.Rptr.2d 595, 867 P.2d 706].) We cannot reverse based on Jose C., Sr.'s credibility arguments on appeal because those arguments do not persuade us that Kimberly A.'s testimony was physically impossible or that it was patently false on its face. (See, e.g., *People v. Barnes* (1986) 42 Cal.3d 284, 306 [228 Cal.Rptr. 228, 721 P.2d 110].)

We acknowledge all of the factors noted by Jose C., Sr., which tend to *impeach* Kimberly A.'s credibility, but impeachment is not impossibility. It was the dependency court's face-to-face role in the courtroom to assess Kimberly A.'s testimony in light of the nature and tenor of her testimony, her demeanor, and the impeaching factors. We see nothing in the record to suggest that the dependency court failed to perform that task. That the dependency court reasonably could have assessed her credibility less favorably or that our court could reasonably make a different assessment of credibility is not sufficient grounds for reversal.

## III. *Ineffective Assistance of Counsel*

In an alternate means to reach the same end, Jose C., Sr., contends the dependency court's findings must be reversed because his trial counsel provided ineffective assistance of counsel by failing to challenge Kimberly A.'s competence and credibility. We disagree.

We address a claim of ineffective assistance of counsel in the dependency context by applying a two-part test. In the first step, we examine whether trial counsel acted in a manner expected of a reasonably competent attorney acting as a diligent advocate. If the answer is no, we move to the second step in which we examine whether, had counsel rendered competent service, the outcome of the proceeding would have been more favorable to

the client. (See, e.g., *In re Emilye A.* (1992) 9 Cal.App.4th 1695, 1705, 1711 [12 Cal.Rptr.2d 294].)

We do not believe Jose C., Sr.'s trial counsel performed below the standard of a reasonably capable and effective lawyer by failing to object to Kimberly A. testifying on the ground she was not competent. Nor would such an objection have resulted in a more favorable outcome for Jose C., Sr. This is so because Kimberly A.'s own attorney noted her mental disabilities and asked the court to assess whether she was "qualified" to testify. Thus, even without an objection, the dependency court considered Kimberly A.'s competence, and found her competent for the reasons given in an extensive statement made at the time it adjudicated the petitions. In short, had Jose C., Sr.'s trial counsel objected, the objection would have been overruled. In this context, there can be no successful claim of ineffective assistance of counsel.

Further, Jose C., Sr.'s trial counsel did not provide ineffective assistance by failing to challenge Kimberly A.'s credibility. First, it was Jose C., Sr.'s counsel who called Kimberly A. to testify. Plainly, counsel wanted to demonstrate to the dependency court that Kimberly A. was not a credible witness. Jose C., Sr.'s counsel initiated direct examination, and was able to elicit responses from Kimberly A. which were at odds with her statements during earlier interviews. The predominant issue during argument was Kimberly A.'s credibility. Jose C., Sr.'s counsel asked the court to dismiss both petitions, arguing that Kimberly A.'s testimony and prior statements should not be believed. Jose C., Sr.'s arguments on appeal do not convince us that more was needed or that he received ineffective assistance of counsel. There is no single, required manner in which to litigate in a trial courtroom and reasonable trial tactics may fall within a wide range of conduct. For this reason, Jose C., Sr.'s ineffective assistance of counsel claim must fail unless he persuades on appeal that the conduct of his trial counsel would not have been provided by any reasonably capable lawyer. Here, Jose C., Sr.'s arguments do no more than persuade us that he believes his trial counsel should have employed different trial tactics.

## IV. *Sibling Abuse*

Jose C., Sr., contends that, even if we determine that substantial evidence supports the dependency court's findings that he sexually abused Kimberly A., the evidence is otherwise not sufficient to support the court's finding that he posed a risk of physical harm as to Jacqueline A., Yesenia C., Ana C., Jose C., Jr., and Eric C. We find the evidence supports a finding that all are at risk of similar abuse except Ana C., who is now 19 and living in a separate home with her mother.

Jose C., Sr.'s argument implicates issues and analyses addressed in cases such as *In re Joshua J.* (1995) 39 Cal.App.4th 984 [46 Cal.Rptr.2d 491], *In re Rubisela E.* (2000) 85 Cal.App.4th 177 [101 Cal.Rptr.2d 760], *In re Karen R.* (2001) 95 Cal.App.4th 84 [115 Cal.Rptr.2d 18] (*Karen R.*), *In re P.A.* (2006) 144 Cal.App.4th 1339 [51 Cal.Rptr.3d 448], *In re Andy G.* (2010) 183 Cal.App.4th 1405 [107 Cal.Rptr.3d 923], and *In re Maria R.* (2010) 185 Cal.App.4th 48 [109 Cal.Rptr.3d 882], which discuss when evidence of abuse of one sibling supports a finding that other siblings are at risk of harm.

In *In re Joshua J., supra,* 39 Cal.App.4th 984, the Fourth District, Division One Court of Appeal held that a father who sexually abused a six-month-old boy reasonably could be found to pose a risk of sexual abuse to the father's newborn son. (*Id.* at p. 987.) The finding was inferentially supported not only by the nature of the abuse, but also by evidence showing that the father suffered from serious mental problems. (*Id.* at pp. 987–988, fn. 3.)

In *In re Rubisela E., supra,* 85 Cal.App.4th 177, Division Two of our court held that a father who engaged in "sexual abuse on multiple occasions" with his 13-year-old daughter, "including asking the child to orally copulate [him]," inferentially supported a finding that the father posed a risk to his nine-year-old daughter because it was "reasonable for the juvenile court to determine that in [the 13-year-old's] absence, [the father was] likely to focus on his only other daughter." (*Id.* at pp. 193, 197.)

In *Karen R., supra,* 95 Cal.App.4th 84, Division Three of our court held that a father who has committed two incidents of forcible incestuous rape of his own daughter when she was 13 years old reasonably could be found "to be so sexually aberrant" that the siblings of the victim, both male and female, aged eight and six, were at substantial risk of sexual abuse. (*Id.* at pp. 90–91.)

In *In re P.A., supra,* 144 Cal.App.4th 1339, Division Three of our court held that a father who twice touched his nine-year-old daughter's vagina under her clothes and on top of her underwear reasonably could be found to pose a risk of sexual abuse to the victim's younger brothers who "were approaching the age at which father had begun to abuse [his] daughter." (*Id.* at pp. 1345–1348.)

In *In re Andy G., supra,* 183 Cal.App.4th 1405, this court affirmed findings that a two-year-old boy was at risk of sexual abuse where the boy's father sexually abused the boy's 12-year-old and 14-year-old half sisters. In affirming the risk-of-abuse finding as to the father's son, we noted that the father had exposed himself to his stepdaughter in his son's presence, and that the father had used his son to gain access to his stepdaughter, all of which inferentially supported a finding that the father had no concern for causing his

son to witness aberrant sexual behavior. (*Id.* at p. 1414.) We also noted that father was resisting sexual abuse counseling for perpetrators. (*Id.* at pp. 1414–1415.)

In *In re Maria R., supra,* 185 Cal.App.4th 48, the Fourth District, Division One Court of Appeal ruled that, in the absence of evidence, such as a scientific study showing that a person who would sexually abuse a female child is likely to sexually abuse a male child, a finding of such a likelihood was not supported by substantial evidence unless there was evidence in the record tending to show the perpetrator had demonstrated an interest in male children. (*Id.* at pp. 61–68.)

■ In our assessment, Jose C., Sr.'s current case most closely fits the model of *In re Karen R., supra,* 95 Cal.App.4th 84 in that Jose C., Sr.'s conduct has been "so sexually aberrant" to support the commonsense conclusion that most every person in the family home was at risk of sexual abuse. The evidence demonstrates that Jose C., Sr., sexually abused a very vulnerable 11-year-old girl with moderate mental disabilities. Though she told her mother about it, her mother did not take any action to stop Jose C., Sr. Further, Kimberly A.'s younger sister, Jacqueline A., begrudgingly reported having observed some of the abuse to DCFS and admitted she did not want to come forward with any further information because she wanted to live with her mother. Kimberly A.'s siblings and half siblings now range in age from five to 19 years old. They are all, with the exception of the youngest child, within six years of her age. Except for Ana C., who was living with her mother, they were all in the home and could have seen the abuse as it was perpetrated in the communal living room, on the couch. Jacqueline A. regularly slept on that couch with Kimberly A. The nature and extent of the abuse, that it was perpetrated upon a particularly vulnerable child, that the abuse was conducted in a place where it was observed by her younger sister and capable of being observed by other siblings, place all the children who still reside in the home at risk of similar abuse by Jose C., Sr. On the other hand, we find no substantial evidence to support the finding of risk as to Ana C., who is now 19 and has never lived in the home.

## DISPOSITION

The dependency court's findings are affirmed as to Jose C., Jr., Eric C., Kimberly A., Jacqueline A., and Yesenia C., and reversed as to Ana C.

Rubin, J., concurred.

**FLIER, J.,** Concurring and Dissenting.—I concur in the majority's conclusion that jurisdiction over Kimberly A. was proper, but I write separately

because I conclude Kimberly was not competent to testify. I dissent from part IV. of the opinion in which the majority concludes that the juvenile court properly assumed jurisdiction over Jose C., Jr., Eric C., and Yesenia C. Jose C., Sr. (father), does not challenge the juvenile court's jurisdiction over Jacqueline A., and I agree with the majority that the record contains no substantial evidence to support jurisdiction over Ana C.

### 1. *Kimberly*

Father first argues that Kimberly was not competent to testify. Father forfeited his challenge to Kimberly's competency because his counsel did not object to her testimony. (*In re S.C.* (2006) 138 Cal.App.4th 396, 420 [41 Cal.Rptr.3d 453].) Father next argues that his counsel rendered ineffective assistance by failing to object to Kimberly's testimony. To show ineffective assistance, father must show not only that counsel's performance was deficient but also that he was prejudiced. (*In re Dennis H.* (2001) 88 Cal.App.4th 94, 98 [105 Cal.Rptr.2d 705]; *In re Kristen B.* (2008) 163 Cal.App.4th 1535, 1540 [78 Cal.Rptr.3d 495].)

Insofar as he argues that Kimberly should not have been permitted to testify, father's argument has merit. Individuals "[i]ncapable of understanding the duty of a witness to tell the truth" (Evid. Code, § 701, subd. (a)(2)) are incompetent to testify (*People v. Anderson* (2001) 25 Cal.4th 543, 572–573 [106 Cal.Rptr.2d 575, 22 P.3d 347]). At the hearing, Kimberly testified that she did *not* "know what [it] means . . . to tell the truth." Kimberly also testified that she did *not* "know it's wrong to tell a lie." Kimberly therefore was not competent to testify.[1]

However, father fails to show that allowing Kimberly to testify constituted deficient representation. If anything, Kimberly's in-court testimony assisted father. Kimberly remembered almost nothing. Importantly, Kimberly did not remember what father did when he touched her. Only when asked the leading question whether she had told "one of the social workers or the police that he put his penis in your mouth," Kimberly responded "yes." But that testimony directly contradicted Kimberly's prior statements in which she unequivocally maintained that she did not allow father to put his penis in her mouth. Moreover, the petition did not include allegations that father put his penis in Kimberly's mouth. Therefore, Kimberly's in-court testimony about such conduct did not support the specific allegations in the petition. Father's counsel may have based her tactical decision to refrain from objecting to Kimberly's competency in order to argue that Kimberly's testimony undermined her credibility. That was counsel's principal argument.

---

[1] Jacqueline, who also said she did not know the difference between the truth and a lie, was not permitted to testify.

Father also fails to show that he was prejudiced by Kimberly's testimony. Instead, he appears to assume incorrectly that if Kimberly had been found incompetent to testify her out-of-court statements also would have been excluded. But, in this context, the out-of-court statements of a child found incompetent to testify are admissible if they are reliable. (Welf. & Inst. Code, § 355, subd. (b); *In re Lucero L.* (2000) 22 Cal.4th 1227, 1231 [96 Cal.Rptr.2d 56, 998 P.2d 1019].) Stated otherwise, Kimberly's out-of-court statements would have been excluded only if they were unreliable and uncorroborated. (See *Lucero L.*, at p. 1252 (conc. opn. of Chin, J.).)

Although father's counsel did not specifically argue that Kimberly's out-of-court statements were unreliable, the gist of counsel's argument was that Kimberly was not a credible witness. The juvenile court necessarily rejected this argument when it sustained the petition.[2] Because father does not show Kimberly's out-of-court statements—the only statements that supported jurisdiction—should have been excluded, he fails to show prejudice from his counsel's alleged deficient performance in not challenging Kimberly's competency. In short, father fails to show he received ineffective assistance of counsel even though his counsel did not object to Kimberly's competency. (*In re Dennis H., supra*, 88 Cal.App.4th at p. 98; *In re Kristen B., supra*, 163 Cal.App.4th at p. 1540.)

### 2. *Jose, Eric, Yesenia and Ana*

No evidence supported jurisdiction over Jose, Eric, Yesenia or Ana. "Substantial evidence does not mean any evidence; it must be ' " 'substantial' proof of the essentials which the law requires." ' [Citation.]" (*In re B.T.* (2011) 193 Cal.App.4th 685, 691 [122 Cal.Rptr.3d 651], italics omitted (*B.T.*).)

### A. *Jose and Eric*

The court sustained allegations that Jose and Eric were dependents of the juvenile court under Welfare and Institutions Code section 300, subdivi-

---

[2] It cannot reasonably be disputed that Kimberly's out-of-court statements, if credited, supported jurisdiction over her. Kimberly's out-of-court statements included the following. On June 9, 2010, Kimberly told police that father had fondled her breasts and touched her vagina. Father "became aroused and put his 'private' in her 'butt' " for approximately two minutes. Kimberly said she felt a lot of pain. Kimberly also told a social worker that father touched her breasts and her vagina. Kimberly told the social worker that father "put his middle part on the front and on the back." Kimberly said neither she nor father was wearing clothes and that father had forcibly removed her clothing. Kimberly also said that her mom saw father kiss her. Kimberly told the social worker father asked her to lick his middle part, but she refused. Kimberly stated that father licked her breasts.

sions (b) and (d).[3] Those allegations provided that father sexually abused Kimberly—an "unrelated child"—and that "[s]uch sexual abuse of the unrelated child by the father endangers the children's physical and emotional health and safety, and places the children at risk of physical and emotional harm, damage, danger and sexual abuse." As I explain, section 300, subdivision (b) is inapplicable, and no substantial evidence supported the juvenile court's finding under subdivision (d).

### i. *Section 300, Subdivision (b)*

Section 300, subdivision (b) provides that a child is a dependent of the juvenile court if "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child, or the willful or negligent failure of the child's parent or guardian to adequately supervise or protect the child from the conduct of the custodian with whom the child has been left, or by the willful or negligent failure of the parent or guardian to provide the child with adequate food, clothing, shelter, or medical treatment, or by the inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's mental illness, developmental disability, or substance abuse." To support jurisdiction under this section, there must be evidence that " '*at the time of the jurisdictional hearing* the child is at substantial risk of serious physical harm . . . .' " (*B.T., supra*, 193 Cal.App.4th at p. 692.)

There was no allegation that father (or any parent) failed to supervise or protect Jose or Eric. Therefore, it was error to take jurisdiction of Eric and Jose under section 300, subdivision (b). Respondent's argument that mother failed to protect Jose and Eric is not supported by any evidence and is irrelevant as there was no such allegation in the petition.

### ii. *Section 300, Subdivision (d)*

Welfare and Institutions Code section 300, subdivision (d) provides that a child is a dependent of the juvenile court if "[t]he child has been sexually abused, or there is a substantial risk that the child will be sexually abused, as defined in Section 11165.1 of the Penal Code, by his or her parent or guardian or a member of his or her household, or the parent or guardian has failed to adequately protect the child from sexual abuse when the parent or guardian knew or reasonably should have known that the child was in danger of sexual abuse." Penal Code section 11165.1 "refers to specific sex acts

---

[3] Undesignated statutory citations are to the Welfare and Institutions Code unless otherwise stated.

committed by the perpetrator on a victim, including child molestation . . . and *does not include* in its enumerated offenses the collateral damage on a child that might result from the family's or child's reaction to a sexual assault on the child's sibling." (*In re Maria R.* (2010) 185 Cal.App.4th 48, 67–68 [109 Cal.Rptr.3d 882] (*Maria R.*).)

There is a split of authority whether a male child is at risk of sexual abuse when his female *siblings* have been sexually abused. *In re Karen R.* (2001) 95 Cal.App.4th 84, 90–91 [115 Cal.Rptr.2d 18] (*Karen R.*), *In re P.A.* (2006) 144 Cal.App.4th 1339 [51 Cal.Rptr.3d 448] (*P.A.*) and *In re Andy G.* (2010) 183 Cal.App.4th 1405 [107 Cal.Rptr.3d 923] (*Andy G.*) concluded that a male child was at risk when his female siblings had been abused. *Karen R.* explained that "a father who has committed two incidents of forcible incestuous rape of his minor daughter reasonably can be said to be so sexually aberrant that both male and female siblings of the victim are at substantial risk of sexual abuse within the meaning of section 300, subdivision (d), if left in the home." (*Karen R., supra*, at pp. 90–91.) *Maria R.* rejected these holdings, concluding instead that there was no evidence "that a perpetrator of sexual abuse of a female child is in fact likely to sexually abuse a male child." (*Maria R., supra*, 185 Cal.App.4th at p. 68.) Similarly, in *In re Rubisela E.* (2000) 85 Cal.App.4th 177, 199 [101 Cal.Rptr.2d 760] (*Rubisela E.*), the court held that the father's abuse of his daughter did not constitute substantial evidence his sons were at risk of sexual abuse.

Even assuming a male child is at risk if his female siblings had been abused, here Kimberly was not a sibling of Jose and Eric. According to the Los Angeles County Department of Children and Family Services's allegations, she was an "unrelated child." *Karen R., P.A.* and *Andy G.* are therefore inapposite. There may be circumstances when a parent's conduct with an unrelated child shows that the related child is also threatened. (See, e.g., *In re Y.G.* (2009) 175 Cal.App.4th 109 [95 Cal.Rptr.3d 532].) However, here there was no evidence supporting the inference that Jose and Eric were at risk of abuse similar to that which father inflicted on Kimberly. (See *B.T., supra*, 193 Cal.App.4th at p. 693 [threatened harm must be to child who is subject to the jurisdiction of the juvenile court, not someone else].)

No evidence supported the finding that Jose and Eric were at risk of sexual abuse. There was *no* evidence that father had an interest in engaging in sexual activity with a male child or in engaging in an incestuous relationship. The only evidence in the record showed just the opposite. Jose told social workers that he loved his dad and that his dad never inappropriately touched him. Eric also stated that his dad never touched him. Both Jose and Eric wanted to live with father. No evidence suggested that Jose and Eric were protecting father or being untruthful in their statements and no evidence was presented that

father had or would harm them in any manner. Speculation that a father may sexually abuse a male child is insufficient to support jurisdiction. Instead, there must be evidence such that the court reasonably could find the child to be a dependent of the court. (*In re Sheila B.* (1993) 19 Cal.App.4th 187, 198–199 [23 Cal.Rptr.2d 482].)

## B. *Yesenia*

Yesenia was two years old when she was detained. Because of her age, she was not interviewed but was observed to be in good health with no indications of abuse. The court assumed jurisdiction over her pursuant to section 300, subdivisions (b), (d), and (j).[4] The allegations under each statute were that father had sexually abused Kimberly; mother had failed to protect Kimberly; and that Yesenia was at risk of physical harm, emotional harm, and sexual abuse.

Evidence that father abused Kimberly when she was 11 years old does not support the finding that Yesenia—his own child and a toddler 11 years younger than Kimberly—was at risk of abuse. Father's only other biological daughter, Ana, made clear that she was never abused and the majority apparently accepted her statements when it reversed jurisdiction over her.[5] Those same statements compel the inference that Yesenia—father's only other biological daughter—also was not at risk of abuse in this case in which no contrary evidence exists. If father had a proclivity for sexually abusing his daughters, there would have been some evidence that he had sexually abused Ana. (See *B.T., supra*, 193 Cal.App.4th at pp. 694–695.) There was no such evidence and speculation that he would abuse Yesenia was insufficient to support jurisdiction. (*Maria R., supra*, 185 Cal.App.4th at p. 68.) Additionally, Yesenia was 11 years younger than Kimberly, which distinguishes this case from those holding that a sibling close in age was at risk of abuse. (See, e.g., *Rubisela E., supra*, 85 Cal.App.4th at p. 197; see also *P.A., supra*, 144 Cal.App.4th at p. 1347.)

## C. *Ana*

I agree with the majority that no substantial evidence supports jurisdiction over Ana. Ana was never sexually abused by father and was not living in a

---

[4] Section 300, subdivision (j) provides that a child is a dependent of the juvenile court if "[t]he child's sibling has been abused or neglected, as defined in subdivision (a), (b), (d), (e), or (i), and there is a substantial risk that the child will be abused or neglected, as defined in those subdivisions. The court shall consider the circumstances surrounding the abuse or neglect of the sibling, the age and gender of each child, the nature of the abuse or neglect of the sibling, the mental condition of the parent or guardian, and any other factors the court considers probative in determining whether there is a substantial risk to the child."

[5] Ana told social workers, "He never molested me when I lived with him and I was little."

home with father when father abused Kimberly. There was no evidence that Ana was at risk of sexual abuse and no other basis for assuming jurisdiction over her.