Filed 4/22/26  In re C.B. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re C.B. et al., Persons Coming Under the Juvenile Court Law. | |
| ORANGE COUNTY SOCIAL SERVICES AGENCY,<br><br>     Plaintiff and Respondent,<br><br>          v.<br><br> A.B.,<br><br>     Defendant and Appellant. | G065952<br><br>(Super. Ct. Nos. 25DP0371, 25DP0372)<br><br>O P I N I O N |

Appeal from orders of the Superior Court of Orange County, Michael T. Mooney, Judge. Affirmed in part, reversed in part.

Diana W. Prince, under appointment by the Court of Appeal, for Defendant and Appellant.

Leon J. Page, County Counsel, Debbie Torrez and Aurelio Torre, Deputy County Counsels, for Plaintiff and Respondent.

No appearance for the Minors.

\*　　　\*　　　\*

A.B. (Father) appeals after the juvenile court made jurisdictional findings declaring his then 17-year-old son, C.B., and 13-year-old daughter, E.B., dependents of the court pursuant to Welfare and Institutions Code section 300, subdivisions (b), (d), and (j).[1] On appeal, Father contends the court erred in assuming jurisdiction over both children because neither child was in need of the court's protection. We affirm the court's orders in part, reverse in part, and remand for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

In late March 2025, C.B. reported Father had sexually abused him from ages 11 to 13 and told him not to tell anyone about the abuse. C.B. came forward because he was concerned about his siblings and the other foster children in Father's care. After his report, Orange County Sheriff's deputies took E.B. and C.B. into protective custody.

### I.

### DETENTION REPORT

The day before the children were removed, an Orange County Sheriff deputy interviewed Father, who denied sexually abusing C.B. or the other children in his home. Father admitted he gave C.B. a back massage and

---

[1] All further statutory references are to the Welfare and Institutions Code.

[2] Our factual summary is limited to those facts relevant to the issues presented in this appeal.

2

claimed C.B.'s therapist had recommended it as a method of comforting C.B. after he had expressed suicidal ideation. Father added that C.B. became sexually aroused during the massage. Father claimed C.B. made up the allegations of sexual abuse because he was upset Father wanted to transfer him to a different school due to poor grades.

Orange County Social Services Agency (SSA) interviewed Father's husband about the allegations. He reported C.B. had told him about the massages in December 2024. When Father's husband asked whether Father was naked or whether anything sexual happened during the massage, C.B. said no. After C.B. began crying, Father's husband asked him whether Father had raped him. C.B. again said no. Father's husband denied ever witnessing Father touch any of the children's private parts. He also explained he thought C.B.'s therapist "was okay" with Father giving C.B. a back massage.

The day before removal, SSA interviewed E.B. She denied any sexual abuse and denied ever seeing Father or Father's husband touch any of her siblings' private parts.

A few days after removal, SSA interviewed C.B.'s adult sister, J.B. J.B. also denied Father had ever sexually abused her, but "one hundred percent" believed C.B.'s disclosure of being sexually abused by Father and reported C.B. has "good character." J.B. stated she did not believe Father would be truthful and believed he would deny the sexual abuse allegations, whether he had abused the children or not. J.B. reported C.B. had attempted suicide a few years ago, and she now suspected his deteriorating mental health could have been caused by Father's sexual abuse. J.B. noted Father would focus his anger on C.B. and get upset with him for minimal reasons. In

3

J.B.'s perspective, Father's anger was unwarranted because C.B. generally exhibited good behavior.

## II.

### DEPENDENCY PETITION

A few days after C.B. reported the sexual abuse, SSA filed a petition on C.B. and E.B.'s behalf. In the petition, SSA alleged C.B. and E.B. fell within the juvenile court's jurisdiction for various reasons, including that Father's sexual abuse caused C.B. to suffer serious physical and emotional harm, and E.B. was at substantial risk of physical harm and sexual abuse because Father had sexually abused C.B.

## III.

### JURISDICTION/DISPOSITION REPORT

A few weeks after removal, SSA interviewed C.B. again. C.B. reported he had told Father's husband about some of the sexual abuse by Father. Father's husband had wanted to "do something" about C.B.'s disclosure, but C.B. did not want him to report the abuse. He instead wanted to turn 18 and leave the family home.  C.B. was also hesitant to report the abuse because he was "still dealing" with the abuse from his biological parents and was "not ready." He decided to report the abuse once he discovered Father was going to adopt more children. C.B. recounted that he had disclosed the abuse to a therapist when he was 13 years old. Because C.B. felt mentally unstable at the time, he told the therapist not to report it.

C.B. then went into greater detail about the sexual abuse. On three different occasions when he was 11 years old, Father asked to give C.B. a massage while they were alone in the home. During these instances, Father would ask C.B. to fully undress. Father would then massage C.B.'s body from

4

"head to toe, except [his] penis," while C.B. lay face up on the bed. After approximately 30 minutes, Father would ask him to turn around, then massaged his butt and anus. Between the ages of 11 and 12, Father would spoon C.B. while they slept on Father's bed, then put his hand under C.B.'s pants and grab his penis. This happened "more than three times." When C.B. was 12 years old, Father took him and some of the other children to a public pool. Father and C.B. were alone in the pool when Father grabbed C.B. and put him on Father's lap. Father grabbed C.B.'s penis and kissed him on the lips and neck. When C.B. was 13 years old, and they were alone together in Father's room, Father grabbed C.B.'s butt and penis under his clothing and offered to show C.B. "how to kiss." Father asked C.B. to get naked and masturbate while Father lay next to him, masturbating and kissing him. During these incidents, two of C.B.'s siblings were in the home. Father told C.B. not to tell anyone about this incident or "he could get in trouble." Father repeated this request "a few times" because C.B. did not immediately agree.

IV.

TRIAL COURT'S JURISDICTION AND DISPOSITION ORDER

Both Father and C.B. testified at the jurisdiction hearing. During his testimony, C.B. described the sexual abuse similarly to how he had described it to SSA. He added that the sexual abuse during the massages lasted approximately two hours. C.B. also testified there had been about 20 instances of sexual abuse. During Father's testimony, he denied ever touching C.B. in a sexual manner or kissed him. He also denied ever massaging C.B. and claimed he "light[ly] touched" his back.

After hearing argument by all counsel, the juvenile court found SSA met its burden of demonstrating the children fell within the scope of the

5

court's jurisdiction. The court sustained the allegations under section 300, subdivisions (b) and (d) with respect to C.B., under section 300 subdivisions (b) and (j) with respect to E.B., and declared both children dependents of the court. The court determined C.B.'s testimony was credible, but Father's testimony was "not credible due to inconsistencies between his testimony and statements made in the reports and given throughout the investigation." The court removed C.B. from Father's custody, and Father waived reunification services as to C.B. The court placed E.B. in Father's custody and ordered family maintenance services for Father. Father timely appealed from the jurisdiction and disposition order.

DISCUSSION

I.

MOOTNESS

C.B. turned 18 years old while this appeal was pending. Generally, this fact would render the appeal moot as to C.B. and subject to dismissal.[3] (*In re Emily L.* (2021) 73 Cal.App.5th 1, 13 [except in certain situations, dependency jurisdiction terminates once a child turns 18, which renders an appeal from those proceedings moot].) Even assuming Father's appeal is moot for C.B. as SSA contends, we retain discretion to consider Father's challenge to the jurisdictional findings.

Our Supreme Court has explained that a court's duty is ""to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions . . . ."" (*In re D.P.* (2023)

---

[3] We requested and received supplemental briefing from Father and SSA on this issue.

6

14 Cal.5th 266, 276 (*D.P.*).) And "[a] case becomes moot when events "'render[] it impossible for [a] court, if it should decide the case in favor of [appellant], to grant him any effect[ive] relief.'"" (*Ibid.*) Since "'the critical factor'" in determining whether the appeal is moot is "'whether the appellate court can provide any effective relief,'" we "must decide on a case-by-case basis whether it is appropriate to exercise discretionary review to reach the merits of a moot appeal." (*Id.* at pp. 276, 287.)

When considering whether to exercise our discretion to review a moot appeal, one of the factors to consider is "whether the jurisdictional finding is based on particularly pernicious or stigmatizing conduct." (*D.P., supra*, 14 Cal.5th at pp. 285–286.) A sexual abuse finding, specifically, "carries a particular stigma." (*In re M.W.* (2015) 238 Cal.App.4th 1444, 1452 (*M.W.*).) This is true because when an adult sexually abuses a child, it constitutes an abandonment of the parental role as well as "'a fundamental betrayal of the appropriate relationship between the generations.'" (*In re I.J.* (2013) 56 Cal.4th 766, 778 (*I.J.*).) Relatedly, we look to whether "the findings against the parent who has appealed are based on more serious conduct." (*D.P.* at p. 286.) "The more egregious the findings against the parent, the greater the parent's interest in challenging such findings." (*Ibid.*) In these circumstances, "it may serve the interest of justice to review the parent's appeal." (*Ibid.*)

Here, the juvenile court exercised jurisdiction over C.B. based on a finding that Father sexually abused him. The trial court's sexual abuse finding is precisely the kind of "more serious conduct" that warrants judicial review. (*D.P., supra*, 14 Cal.5th at p. 286.) In addition, the sexual abuse jurisdictional finding here carries a unique stigma, beyond the stigma

7

associated with other bases of jurisdiction. (*M.W., supra*, 238 Cal.App.4th p. 1452.) Moreover, the same acts affecting jurisdiction for C.B. are at issue for E.B., and Father continues to be affected by the jurisdictional order affecting E.B. Consequently, given the nature of the findings here and because we reach the merits of the jurisdictional findings for E.B., we do the same for the findings for C.B., who is no longer a minor.

## II.

### RELEVANT LAW AND STANDARD OF REVIEW

Section 300 lists the circumstances under which a child may be declared a dependent of the juvenile court. Under subdivision (b)(1) of section 300, the court may take jurisdiction if he child "has suffered, or there is a substantial risk that the child will suffer, serious physical harm" as a result of the failure of his or her parent to "adequately supervise or protect the child." (*Id.*, subd. (b)(1)(A)). Subdivision (j) of the statute permits the court to take jurisdiction over a sibling of a child who "has been abused or neglected, as defined in subdivision (a), (b), (d), (e), or (i)," if there is "a substantial risk that the child will be abused or neglected, as defined in those subdivisions." (*Id.*, subd. (j).) In deciding whether to take jurisdiction under subdivision (j), the "court shall consider the circumstances surrounding the abuse or neglect of the sibling, the age and gender of each child, the nature of the abuse or neglect of the sibling, the mental condition of the parent or guardian, and any other factors the court considers probative in determining whether there is a substantial risk to the child." (*Ibid*.)

We review the juvenile court's jurisdictional findings for substantial evidence. (*In re J.E.* (2020) 54 Cal.App.5th 309, 313.) "Substantial evidence is 'evidence that is reasonable, credible, and of solid value—from

which a reasonable trier of fact could have made the requisite finding under the governing standard of proof.' (*In re Jerry M.* (1997) 59 Cal.App.4th 289, 298.) Under this standard 'we review the record in the light most favorable to the court's determinations and draw all reasonable inferences from the evidence to support the findings and orders.' (*Kevin R. v. Superior Court* (2010) 191 Cal.App.4th 676, 688–689.) 'We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court.' (*In re Matthew S.* (1988) 201 Cal.App.3d 315, 321.) '[T]he trial court's ruling must be upheld if there is any basis in the record to sustain it.'" (*In re J.E.* at pp. 313–314.)

III.

ANALYSIS

### A. Allegation b-1

#### 1. C.B.

As described in more detail above, Father's sexual abuse of C.B. lasted over three years and occurred over twenty times. The abuse occurred in the family home and in the presence of other children in a public place. Father instructed C.B. not to report the abuse. The nature and extent of the abuse constitute substantial evidence to sustain jurisdiction over C.B. under section 300, subdivision (b).

Father's argument that C.B. was no longer at risk of abuse at the time of the jurisdiction hearing because the abuse "was remote in time" is unsupported by the record because the abuse occurred only four years before the jurisdiction hearing. Regardless, the mere passage of time is not dispositive. (*Los Angeles County Dept. of Children & Family Services v. Superior Court* (2013) 215 Cal.App.4th 962, 970 (*Los Angeles County Dept. of*

9

*Children & Family Services*).) Father seemingly attempts to differentiate this case from *In re J.K.* (2009) 174 Cal.App.4th 1426. There, the appellate court found a child was at risk of harm even though the parent's abuse had stopped two years before the jurisdictional hearing. (*Id.* at p. 1439.) Here, the passage of four years from the time the abuse stopped is not distinguishable from the two years in *J.K.* Additionally, Father's reliance on *In re Carlos T.* (2009) 174 Cal.App.4th 795 is misplaced. The analysis in *Carlos T.* focused on the parents' lack of access to the child based on his incarceration, not the passage of time since the abuse occurred. (*Id.* at pp. 802, 805–806.)

Father also argues C.B. no longer needed protection from the court because C.B. no longer lived with him and Father had waived reunification services. We are not persuaded. On appeal, we consider whether C.B. was at risk of abuse at the time the jurisdictional hearing took place. (*In re T.V.* (2013) 217 Cal.App.4th 126, 133.) At that time, Father maintained legal and custodial rights over C.B. and, without the juvenile court's intervention, could have attempted to obtain access to him. Moreover, without the court's jurisdiction, C.B. would have reverted to Father's custody.

Father's argument C.B. was not at risk of harm at the time of the jurisdiction hearing because Father was cooperating with SSA and "took the proceedings seriously" is not supported by the record. The record shows Father persistently denied the sexual abuse allegations. His denial further gave the juvenile court adequate grounds to believe that a substantial risk existed. (See *In re Gabriel K.* (2012) 203 Cal.App.4th 188, 197 ["One cannot correct a problem one fails to acknowledge."]; *In re Esmeralda B.* (1992) 11 Cal.App.4th 1036, 1044 ["denial is a factor often relevant to determining whether persons are likely to modify their behavior in the future without

court supervision"].) We therefore conclude that the jurisdictional finding was supported by substantial evidence that C.B. faced a risk of harm at the time of the hearing.

2. E.B.

Although E.B. denied ever being sexually abused by Father, substantial evidence supports the juvenile court's finding under section 300, subdivision (b). As explained earlier, we find substantial evidence supported the court's jurisdiction over E.B. We find a similar analysis largely applied to E.B. She was also at risk due to Father's history of abusing C.B. and his consistent denial of the abuse allegations.

Father argues E.B. was not at risk of harm because C.B.'s sexual abuse occurred four to six years before the court proceedings, E.B. never witnessed the sexual abuse, and because J.B., their adult sister, denied any abuse. ~(**aob 20**)~ We disagree. As we explained above, the sexual abuse was not so remote as to indicate the children were not at risk of harm at the time of jurisdiction.

Next, although E.B. reported she never witnessed sexual abuse, there was a risk she may have. Father abused C.B. when other children were present at a public pool and other times when children were in the home. Because Father sexually abused C.B. in places "capable of being observed" by other children, Father's abuse placed E.B. at substantial risk of harm. (*In re Ana C.* (2012) 204 Cal.App.4th 1317, 1332.)

Finally, while not entirely clear, Father appears to argue E.B. was not at risk of sexual abuse because her older sister denied any sexual abuse. Thus, Father seemingly argues E.B. was not at risk because, like her sister, and unlike C.B., she is female. This argument is unpersuasive. Case

11

law categorically holds that "sexual abuse of one child may constitute substantial evidence of a risk to another child in the household—even to a sibling of a different sex or age . . . ." (*Los Angeles County Dept. of Children & Family Services, supra,* 215 Cal.App.4th at p. 968.)

*B. Allegation b-2*

Allegation b-2 of the petition states C.B. was "at substantial risk of suffering serious emotional damage" based on Father's emotional and sexual abuse.

Subdivision (b) of section 300 does not provide for jurisdiction based on emotional harm. (*In re Daisy H.* (2011) 192 Cal.App.4th 713, 718, disapproved of on other grounds in *D.P., supra,* 14 Cal.5th at pp. 266, 278.) Emotional harm is addressed in section 300, subdivision (c), which provides that jurisdiction is warranted where "[t]he child is suffering serious emotional damage, or is at substantial risk of suffering serious emotional damage, evidenced by severe anxiety, depression, withdrawal, or untoward aggressive behavior toward self or others, as a result of the conduct of the parent or guardian or who has no parent or guardian capable of providing appropriate care."

SSA asserts we may affirm jurisdiction based on subdivision (b) of section 300 because C.B.'s mental and emotional issues caused by Father's sexual abuse placed him at risk of "serious self-harm." SSA argues the risk of serious self-harm "trigger[s]" jurisdiction under section 300, subdivision (b). The evidence cited in the b-2 allegation, however, focuses on C.B.'s mental and emotional issues, citing C.B.'s history of suicidal ideation and how Father's abuse exacerbated C.B.'s issues. There is, however, no reference to

12

the risk of C.B. self-harming or any other risk of physical harm. We therefore find the b-2 finding under subdivision (b) of section 300 was an error.

While there may be sufficient evidence to sustain a finding under section 300, subdivision (c), "[w]e cannot affirm a jurisdictional finding that was never alleged or made in the trial court." (*In re V.M.* (2010) 191 Cal.App.4th 245, 253.) Because SSA did not allege that jurisdiction was appropriate under section 300, subdivision (c), and the juvenile court did not make any jurisdictional findings under subdivision (c), we cannot affirm jurisdiction based on that subdivision.

*C. Allegation j-1*

Father next argues the juvenile court erred when it assumed jurisdiction under section 300, subdivision (j) because there was no future risk of abuse to E.B. Father does not contest the sufficiency of the evidence showing he sexually abused C.B. Nevertheless, he argues there is insufficient evidence to show a risk of harm to E.B. as required to take jurisdiction over her under section 300, subdivision (j). Father repeats his arguments that there was no evidence he sexually abused E.B. or her adult sister J.B., E.B. never witnessed his abuse of C.B, and E.B. is at the age when Father stopped abusing C.B. Finally, Father argues E.B. is intelligent, outspoken, and would speak out if Father ever acted inappropriately.

*I.J.*, *supra*, 56 Cal.4th 766 is instructive. In that case, the juvenile court took jurisdiction over five siblings—two daughters and three sons—after finding their father had sexually abused the oldest daughter over the course of three years. (*Id.* at p. 771.) There was no evidence the father had abused or mistreated his sons. (*Ibid.*) Nor was there evidence the sons witnessed or were aware their father had abused their sister. (*Ibid.*) The

13

father appealed, arguing the evidence that he sexually abused his daughter did not support the court's finding that his sons were at risk of harm. (See *id*. at p. 772.)

The California Supreme Court held the juvenile court properly took jurisdiction over all the children under section 300, subdivision (j). (*I.J.*, *supra*, 56 Cal.4th at p. 778.) The court noted the father's sexual abuse of his own daughter was "'aberrant in the extreme,'" and there was a risk the other children would learn of or witness it. (*Ibid*.) Although the daughters may have been at greater risk of abuse than the sons, "this does not mean the risk to the sons is nonexistent or so insubstantial that the juvenile court may not take steps to protect the sons from that risk. . . . The juvenile court need not compare relative risks to assume jurisdiction over all the children of a sexual abuser, especially when the abuse was as severe and prolonged as here." (*Id*. at pp. 779–780.) The court concluded the "serious and prolonged nature of father's sexual abuse of his daughter under these circumstances supports the juvenile court's finding that the risk of abuse was substantial as to all the children." (*Id*. at p. 778.)

Here, Father's sexual abuse of C.B. was as prolonged, a three-year period, as the abuse in *I.J.* and was "'aberrant in the extreme.'" (*I.J.*, *supra*, 56 Cal.4th at p. 778.) On multiple occasions, Father asked C.B. to take off his clothing and then massaged his body and anus for two hours. Father also asked C.B. to masturbate while he lay next to him, masturbated, and kissed him. Father grabbed C.B.'s penis while they lay in bed on multiple occasions and again while at a public pool. Father would kiss C.B. on the lips and neck. Given the magnitude of the potential harm posed by Father's

14

sexual abuse, a relatively low degree of probability of harm to E.B. was required to take jurisdiction under subdivision (j). That standard is met here.

Next, as we discussed above, the fact that E.B. stated she never witnessed the abuse does not mean there was no risk that she could. On one occasion, Father abused C.B. at a public pool where other siblings were present. On another occasion, Father abused C.B. while two of the children were in the home. Therefore, there was a high probability E.B. could have learned of or witnessed the abuse.

As to E.B.'s age, she was 13 years old at the time of jurisdiction. At this age, Father was still abusing C.B. In any event, "sexual abuse of one child may constitute substantial evidence of a risk to another child in the household—even to a sibling of a different sex or age . . ." (*Los Angeles County Dept. of Children & Family Services, supra,* 215 Cal.App.4th at p. 968.)

Lastly, Father's argument that E.B. would speak out if she were abused is unavailing. Father told C.B. not to tell anyone about the abuse, and C.B. did just that for over five years. Thus, even though E.B. is intelligent and outspoken, there is a risk that, with Father's guidance, E.B. would not "speak out if Father ever acted inappropriately."

## DISPOSITION

The juvenile court's jurisdictional orders with respect to allegation b-2 are reversed. The case is remanded to the juvenile court. On remand, SSA may consider whether to file a petition alleging jurisdiction

under section 300, subdivision (c). In all other respects, the jurisdictional findings are affirmed.

DELANEY, J., ACTING P. J.

WE CONCUR:

GOODING, J.

SCOTT, J.

16