Filed 9/18/14  In re G.J. CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re G.J., a Person Coming Under the Juvenile Court Law. | B253170 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>　　　Plaintiff and Appellant,<br><br>　　　v.<br><br>JOHNNY J. et al.,<br><br>　　　Defendants and Appellants. | (Los Angeles County Super. Ct. No. CK69440) |

APPEAL from an order of the Superior Court of Los Angeles County.  Annabelle Cortez, Judge.  Affirmed.

John F. Krattli, County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Stephen D. Watson, Deputy County Counsel, for Plaintiff and Appellant.

Lori Siegel, under appointment by the Court of Appeal, for Defendant and Appellant Pamela J.

Jack A. Love, under appointment by the Court of Appeal, for Defendant and Appellant Johnny J.

Pamela and Johnny J. were the legal guardians of their granddaughter, G.J. After the Los Angeles County Department of Children and Family Services (DCFS) filed a dependency petition alleging the guardians had physically abused G.J., they told DCFS they wished to terminate the guardianship. Eventually, the juvenile court sustained a dependency petition alleging the guardians' failure to adequately supervise G.J. placed her at risk of harm. The court subsequently terminated the probate guardianship on DCFS's motion, and with the agreement of all parties. On appeal, the guardians contend the juvenile court erred in failing to dismiss the dependency petition arising out of their conduct. DCFS has filed a cross-appeal contending the juvenile court erred in failing to assert jurisdiction under Welfare and Institutions Code section 300, subdivision (a), based on allegations that the guardians physically abused G.J.[1] We affirm the juvenile court's jurisdictional order.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2009, G.J.'s paternal grandparents, Pamela and Johnny J., became her legal guardians by means of a probate proceeding. In late September 2012, four-year-old G.J. was living with the guardians and their three minor children (G.J.'s uncles), when DCFS received a referral suggesting G.J. had been physically abused. G.J. had bruises on her face and lips. She reported Pamela hit and slapped her face with an open hand. G.J. also had bruises and scars on her back; G.J. said the guardians hit her with a belt. G.J. told DCFS and law enforcement she had been hit in the face and mouth on multiple occasions, and the guardians had several times used a belt to hit her on the back, legs, and buttocks. The guardians denied hitting or slapping G.J. They said the injuries on G.J.'s face were self-inflicted. However, DCFS reported the guardians admitted "whoop[ing]" G.J. with a belt on her back. DCFS detained G.J.

In a law enforcement incident report from the night of the detention, the responding officer reported G.J. said she was slapped in the face with an open hand if she

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise noted.

misbehaved, and such hitting had occurred more than once.  The youngest uncle (seven years old) said the guardians (his parents) punished him by giving him a time out or spanking him on his "back and butt."  He said the guardians used a belt to spank his two older brothers and G.J.  He denied that any of the children were hit on the face.  The middle uncle (11 years old) said his parents punished him by taking away his things, making him sit in his room, or spanking him.  He said only he and his older brother were spanked with a belt, not G.J. or his younger brother.  The oldest boy (13 years old) said his parents punished him by taking away privileges.  He said none of the children were ever hit.

Pamela J. told the officer she punished the children by sending them to their rooms, taking toys away, or, when they were really bad, they would "get a whoopin," which she described as an open-handed spanking on the buttocks.  According to the report, Pamela also said "the children would get spanked with the belt when they were really bad."  She denied hitting the children on their faces and indicated G.J. had bruises on her lips from biting them.  She said one scar on G.J.'s back dated from before the guardians had custody of her, but another scar was "probably from a 'whoopin.'"  Johnny J. similarly said the children were spanked if they were "really bad," and spankings were sometimes done with a belt, but not often.  He denied any knowledge of scars on G.J.'s back.  He indicated neither he nor Pamela ever hit any of the children on their faces.

DCFS filed a dependency petition alleging the guardians had subjected G.J. and her uncles—their three sons—to physical abuse, and dependency jurisdiction over G.J. was warranted under section 300, subdivisions (a) and (b).[2]  At the October 3, 2012

---

[2]      With respect to section 300, subdivisions (a) and (b), the petition alleged:  "In September of 2012, the child, [G.J.'s] legal guardian paternal grandmother, Pamela [J.], physically abused the child by striking the child's face and lips with the legal guardian's hand, inflicting bruises to the child's face and lips.  The legal guardian struck the child's body with a belt, inflicting bruises and scars to the child's back.  On prior occasions in 2012, the legal guardian struck the child's face and lips with the legal guardian's hand.  On prior occasions in 2012, the legal guardian struck the child's back, legs, and buttocks with belts.  Such physical abuse was excessive and caused the child unreasonable pain

detention hearing, the juvenile court ordered DCFS to look into termination of the legal guardianship and possible dismissal under section 301.**3**

In a December 2012 jurisdiction and disposition report, DCFS reported the guardians' three children denied the guardians ever hit or spanked them or G.J. The guardians denied ever using a belt to hit G.J. Pamela J. said she only once struck G.J. with her hand. G.J. told the social worker the guardians "don't whop me no more." She said she got marks on her back after leaning on a rock. However, G.J.'s foster mother reported G.J. told her Johnny J. whipped her on the back with a belt, she was "whopped everyday," Pamela hit her, and the guardians' children also hit her or "whopped her" with a belt. The foster mother also indicated one of the marks on G.J.'s back was very deep and was still healing.

The guardians asked that the legal guardianship of G.J. be terminated. The social worker noted: "This DI informed the paternal grandparents/legal guardians that based on their decision to terminate the legal guardianship; the Department will inform the Court of their decision." However, the report also indicated the guardians asked for visitation with G.J. DCFS recommended that the court terminate the guardianship. In a December last minute information, DCFS informed the court there had been no visits or telephone calls between the guardians and G.J. In March 2013, Pamela told DCFS the guardians did not wish to visit G.J. due to the allegations.

---

and suffering. The child's legal guardian paternal grandfather, Johnny [J.] failed to protect the child when the legal guardian knew of the child's physical abuse by the legal guardian, Pamela [J.] Such physical abuse of the child by the legal guardian, Pamela [J.] and the legal guardian, Johnny [J.'s] failure to protect the child endangers the child's physical health and safety and places the child at risk of physical harm, damage, danger, physical abuse, and failure to protect." Similar paragraphs alleged Johnny J., physically abused G.J. and Pamela J. failed to protect her. Under both statutory bases for jurisdiction, the petition also alleged the guardians physically abused their three children and the physical abuse of the uncles endangered G.J.

**3** Section 301 allows for voluntary supervision by the social services agency either in lieu of filing a petition, or subsequent to the dismissal of an already-filed petition.

In the months that followed, DCFS investigated whether it would be possible to safely release G.J. to her mother. DCFS was forced to change G.J.'s foster placement on at least two occasions. The first change was required because: "The child hurts herself and blames others and is not able to get along with younger children in the foster home." The second change was required for the same reasons, and, in addition: "Child is assaultive and has been suspended from school."

In July 2013, the guardians again told DCFS they wished to have the legal guardianship terminated, as reported in a supplemental report. DCFS noted the guardians had not visited G.J. and declined family reunification services. The court conducted a contested jurisdiction hearing on July 9, 22, and 25, 2013.[4] G.J. testified, as did the guardians and their three sons. The guardians' counsel argued the petition should be dismissed for insufficient evidence. After hearing the evidence and argument, the court noted there were "inconsistent facts and changing stories." The court did not find credible the guardians' testimony denying any physical discipline. As to G.J.'s testimony, the court noted G.J. was consistent in using the term "whooping" to describe what had happened to her, and the term was also consistent with the guardians' statements to law enforcement. The court acknowledged: "[G.J.] again was not very focused and not 100 percent consistent but when the court puts together all of the different pieces and trying to figure out whether there is a preponderance of evidence to find out whether these allegations are true. [¶] The court finds that taken together there is a preponderance of evidence to find that these allegations are true." The court noted that while it could not make a finding about the cause of the injuries to G.J.'s lips, "there is sufficient information concerning the use of the belt and the inappropriate discipline." However, the court further explained: "Everybody had different stories about what happened to [G.J.] but she was—she ultimately did sustain physical injuries that were described in the pictures and she was under the care of the legal guardians."

---

**4** At the conclusion of the hearing, the juvenile court dismissed a petition seeking dependency jurisdiction over the guardians' three sons.

The court sustained the petition with the following amended language: "On prior occasions in 2012 the child, [G.J.], sustained multiple unexplained injuries, including but not limited to her face and her neck and her back while under the care and supervision of legal guardians Johnny [J.] and Pamela [J.]; [¶] Such unexplained injuries would not have occurred but for the failure of the legal guardians to adequate[ly] supervise the child which places the child at risk of harm."

When the court asked if the parties wished to be heard regarding disposition, counsel for DCFS indicated the guardians wished to terminate the legal guardianship and notice had to be provided to the probate court. The guardians' counsel submitted on the recommendation to terminate the legal guardianship. On October 8, 2013, DCFS filed a motion pursuant to section 728 to terminate the probate legal guardianship. At an October 29 disposition hearing, the juvenile court found it was in G.J.'s best interest to terminate the legal guardianship, and so ordered. However, counsel for DCFS asked for a stay of the order terminating the legal guardianship because DCFS needed to "file or assess the parents for placement or otherwise file a 300 petition for this court to take jurisdiction." The guardians interposed no objection to the stay. The court stayed the order, but also declared G.J. a dependent of the court, finding by clear and convincing evidence that substantial danger existed to G.J.'s physical health or she was suffering severe emotional damage, and there was no reasonable means to protect her without removing her from her parents' or guardians' physical custody. The court placed G.J. in the care of DCFS for suitable placement.[5]

---

[5] These findings do not appear in the reporter's transcript, however, they are reflected in the October 29 minute order.

6

On November 13, 2013, DCFS filed a new original petition asserting dependency jurisdiction was warranted due to the conduct of G.J.'s parents.  The court lifted the stay on the order terminating the legal guardianship and made detention findings based on the second petition.[6]

### DISCUSSION

### I.    The Guardians' Appeal

### A.  The Trial Court Did Not Err in Failing to Sua Sponte Dismiss the Petition

The guardians contend the juvenile court abused its discretion by failing to dismiss the dependency petition under section 390.  They argue that since they wished to terminate the guardianship, there was no need for the court to sustain a dependency petition based on their conduct, and no need to protect G.J. from them.  They further assert that after DCFS filed a new dependency petition, the court abused its discretion by failing to dismiss the first petition identifying them as "neglectful guardians."  We find no abuse of discretion.

Under section 390, "[a] judge of the juvenile court in which a petition was filed, at any time before the minor reaches the age of 21 years, may dismiss the petition or may set aside the findings and dismiss the petition if the court finds that the interests of justice and the welfare of the minor require the dismissal, and that the parent or guardian of the minor is not in need of treatment or rehabilitation."  The guardians assert the court should have invoked this section to dismiss the petition based on their conduct, either before making jurisdictional findings relating to them, or after or concurrently with the order terminating the legal guardianship.  But, as the guardians at least implicitly concede, they never asked the juvenile court to dismiss the petition on the ground that they merely wished to terminate the guardianship.  Although they informed DCFS fairly early in the

---

[6]     The copy of the November 13, 2013 petition in the record bears a "dismissed" stamp.  While counsel for DCFS indicated the department planned to file a first amended petition, the reporter's transcript does not include any discussion of a dismissal of the petition filed on November 13, 2013; the record also does not include any subsequently filed petitions.

7

proceedings that they wished to terminate the guardianship, they neither requested that the court dismiss the petition on that ground, nor filed a motion to terminate the guardianship.[7] While the guardians argue section 390 authorized the juvenile court to dismiss the petition, they neither requested such a dismissal, nor objected on these grounds in the proceedings below. The only request to the court for dismissal came at the end of the jurisdiction hearing, when the guardians asked the court to dismiss the petition and find insufficient evidence supported the allegations that they physically abused G.J. That request did not raise the issue of a discretionary section 390 dismissal based on the guardians' desire to terminate the guardianship. (*In re E.A.* (2012) 209 Cal.App.4th 787, 790-791.)

Once the guardianship was terminated, the guardians still did not seek dismissal of the petition on that ground, or object to the court's failure to dismiss the petition. "[A] reviewing court ordinarily will not consider a challenge to a ruling if an objection could have been but was not made in the trial court. [Citation.] The purpose of this rule is to encourage parties to bring errors to the attention of the trial court, so that they may be corrected. [Citation.] Dependency matters are not exempt from this rule." (*In re S.B.* (2004) 32 Cal.4th 1287, 1293, fn. omitted, superseded by statute on another ground as stated in *In re S.J.* (2008) 167 Cal.App.4th 953, 964.) By failing to either request dismissal of the petition on the grounds raised in this appeal, or to object to the juvenile court's alleged failure to dismiss the petition, the guardians have forfeited any claim of error on this basis on appeal. (*In re Ana C.* (2012) 204 Cal.App.4th 1317, 1325-1326.)

---

[7] Under section 728, subdivision (a), the juvenile court may terminate a guardianship of a minor previously established under the Probate Code, if the minor is the subject of a petition filed under section 300. The guardian may file a motion to terminate the guardianship. "The hearing on the motion may be held simultaneously with any regularly scheduled hearing held in proceedings to declare the minor a dependent child . . . or at any subsequent hearing concerning the dependent child . . . ." (§ 728, subd. (a).) Thus, as explained in *In re Merrick V.* (2004) 122 Cal.App.4th 235, 253, section 728 "gives the juvenile court the authority to terminate a Probate Code guardianship at any stage in the dependency proceeding, including at the detention hearing or the jurisdictional hearing."

8

Even were we to consider the merits of the argument, we would reject it because the guardians have demonstrated no abuse of discretion in the court's conduct of the proceedings. The immediate risk of danger to G.J. came from the physical injuries she suffered while in the guardians' legal and physical custody. Irrespective of the guardians' continued participation in the proceedings, the juvenile court had the authority to adjudicate a petition based on those injuries, and the authority to find G.J. was a person described by section 300 based on events occurring while she was in the legal guardians' custody. This was especially true since, despite their statements to DCFS, the guardians never filed a motion to terminate the guardianship, and made conflicting statements about their desire to have visits with G.J. While Pamela and Johnny J. remained G.J.'s legal guardians, the juvenile court could reasonably proceed by first determining whether their conduct had harmed G.J. or placed her at risk of harm, before terminating the guardianship and ending the relationship G.J. had with the guardians since she was one year old.[8]

Moreover, the guardians do not assert the evidence was insufficient to support the juvenile court's jurisdictional order. It is well established that the juvenile court asserts dependency jurisdiction over the child, not the parents or guardians. (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1491 (*I.A.*).) "The [dependency] law's primary concern is the protection of children. [Citation.] The court asserts jurisdiction with respect to a child when one of the statutory prerequisites listed in section 300 has been demonstrated. . . . Parental personal jurisdiction allows the court to enter binding orders adjudicating the parent's relationship to the child . . . but it is not a prerequisite for the court to proceed, so long as jurisdiction over the child has been established. [Citation.] Further, every parent has the option not to participate in the proceeding, even if properly noticed. [Citation.]

---

[8] The sole criterion for termination of a probate guardianship is the best interest of the minor. Thus, the juvenile court has jurisdiction to terminate a pre-dependency probate guardianship if it is in the best interest of the minor to do so. No finding of detriment is necessary. (*A.H. v. Superior Court* (2013) 219 Cal.App.4th 1379, 1391-1392.)

[¶] As a result of this focus on the child, it is necessary only for the court to find that one parent's conduct has created circumstances triggering section 300 for the court to assert jurisdiction over the child. [Citations.] Once the child is found to be endangered in the manner described by one of the subdivisions of section 300—e.g., a risk of serious physical harm (subds. (a) & (b)), serious emotional damage (subd. (c)), sexual or other abuse (subds. (d) & (e)), or abandonment (subd. (g)), among others—the child comes within the court's jurisdiction, even if the child was not in the physical custody of one or both parents at the time the jurisdictional events occurred. [Citation.]" (*Id.* at pp. 1491-1492.)

And, as noted by the court in *D.M. v. Superior Court* (2009) 173 Cal.App.4th 1117, 1129, an appealing parent's or guardian's "focus on how they believe the dependency proceedings reflect poorly on them misconstrues the purpose of juvenile court dependency jurisdiction. 'The purpose of the California dependency system is to protect children from harm and preserve families when safe for the child.' (§ 300.2.) . . . . Fundamentally . . . the focus of the system is on the child, not the parents." These principles govern the result here.[9] As the guardians point out, under section 390,

---

[9]     In *I.A.,* the court concluded the father's appeal was not justiciable because he challenged only the court's jurisdictional findings based on his conduct, not the findings based on the mother's conduct. (*I.A., supra*, 201 Cal.App.4th at pp. 1492-1493.) Because the juvenile court was entitled to assert jurisdiction over the child based on the unchallenged allegations, the appellate court explained it could not render any relief to the father that would have a "practical, tangible impact on his position in the dependency proceeding." (*Id.* at p. 1492.) We have similar concerns in this case. The guardians do not argue that dependency jurisdiction over G.J. was improper, only that findings should not have been made as to them. Further, it is unclear what relief this court could provide to the guardians, even were we to agree with their arguments on appeal. The court's dispositional order granted the guardians the relief they sought—termination of the legal guardianship. They expressed no interest in having any future involvement with G.J., although they still have a biological tie to her as her grandparents. While the guardians assert they may face negative consequences from the jurisdictional order, such as difficulty finding employment or continuing to coach soccer, these consequences appear to be highly speculative. (*In re C.C.* (2009) 172 Cal.App.4th 1481, 1489.) However, it is unclear whether the petition based on the guardians' failure to protect was dismissed or

10

the juvenile court may dismiss a petition "if the court finds that the interests of justice and the welfare of the minor require the dismissal, and that the parent or guardian of the minor is not in need of treatment or rehabilitation." Yet, in this case, the record before the court did not mandate such findings. Dependency jurisdiction was necessary to protect G.J. That DCFS could have asserted other allegations to support jurisdiction does not mean the court abused its discretion in adjudicating the petition based on the facts actually alleged in the petition, which the court found at least partially true. Further, even when the juvenile court terminated the guardianship, the court could reasonably conclude the interests of justice and the welfare of G.J. did not warrant the dismissal of the original petition at that time, since dependency jurisdiction was still necessary to protect G.J.

The guardians argue there were ways to protect G.J. other than adjudicating a petition based on their conduct, particularly since they no longer wanted to be G.J.'s guardians. But in the absence of a motion from the guardians to terminate the guardianship earlier in the proceedings, or a motion to dismiss the petition on that ground, we cannot find the trial court abused its discretion in failing to terminate the guardianship before adjudicating the petition, or in failing to dismiss the petition under section 390. The court was presented with a dependency petition. The guardians, without formally seeking termination of the guardianship, contested the petition on its merits. The court found a basis for jurisdiction arising out of the evidence of the

---

superseded by another petition. (See *In re A.B.* (2014) 225 Cal.App.4th 1358, 1364 [finding mother's appeal from court's jurisdictional findings under original petition moot where substantial evidence supported jurisdictional findings under a subsequent petition].) Indeed, DCFS has cross-appealed based on the same petition. If the original petition has not been dismissed or superseded, a reversal by this court would presumably require that the jurisdictional order be dismissed. Because of this uncertainty, and in an abundance of caution, we do not dismiss the appeal as moot or otherwise lacking justiciability.

11

guardians' actions or omissions.  The guardians do not argue the evidence was insufficient to support jurisdiction.[10]  We find no error.

## II.    The DCFS Appeal

### A. Substantial Evidence Supported the Juvenile Court's Jurisdictional Findings

On appeal, DCFS contends the juvenile court erred when it modified the language in the original dependency petition and sustained allegations indicating only that the guardians failed to adequately supervise G.J., rather than reflecting they physically abused her.  We find no error.[11]

---

[10]    We disagree with the guardians' argument that unnecessary delays entitled them to dismissal of the dependency petition.  Indeed, the legal authority Johnny J. cites to support his argument directly contradicts his contention.  In *In re Richard H.* (1991) 234 Cal.App.3d 1351, the court rejected the claim that a petition must be dismissed if statutory time limits for dependency hearings are not met.  (*Id.* at p. 1362.)  Even if the delays in this case were prejudicial to G.J., a dismissal of the dependency petition because of those delays would not have been in the interests of justice and would not have advanced the "'paramount purpose underlying dependency proceedings,'" namely "'the protection of the child.'"  (*Ibid.*)

[11]    As with the guardians' appeal, the justiciability of the issue raised in DCFS's cross-appeal is far from obvious.  As explained below, as long as substantial evidence supports any one of the bases upon which the juvenile court asserted dependency jurisdiction, we will affirm the jurisdictional order and need not review any other bases.  The juvenile court asserted jurisdiction over G.J., which was what DCFS requested.  DCFS does not contend jurisdiction was improper, only that the juvenile court should have asserted jurisdiction under subdivision (a) of section 300, in addition to subdivision (b).  Further, the legal guardianship has been terminated and the guardians neither sought reunification services nor attempted to visit G.J.  DCFS filed a new petition alleging jurisdiction was appropriate based on the conduct or absence of G.J.'s biological parents.  DCFS has not explained how it is aggrieved by the juvenile court's order sustaining jurisdictional findings as to the legal guardians under section 300, subdivision (b) alone, rather than under section 300, subdivision (a), in the original petition.  However, as noted above, it is not clear from the appellate record that the original dependency petition based on the guardians' conduct has been dismissed or superseded.  (See *In re Marquis H.* (2013) 212 Cal.App.4th 718, 724; *In re A.R.* (2009) 170 Cal.App.4th 733, 740 [appeal may not be moot if the court's orders may infect the outcome of subsequent proceedings]; *In re Joshua C.* (1994) 24 Cal.App.4th 1544, 1547 [appeal not moot where alleged defect

"We review the court's jurisdictional and dispositional findings for substantial evidence. [Citations.] Evidence is "'[s]ubstantial'" if it is ""'reasonable, credible, and of solid value.'"" [Citation.] We do not pass on the credibility of witnesses, attempt to resolve conflicts in the evidence or weigh the evidence. Instead, we draw all reasonable inferences in support of the findings, view the record favorably to the juvenile court's order and affirm the order even if other evidence supports a contrary finding. [Citations.] The appellant has the burden of showing there is no evidence of a sufficiently substantial nature to support the findings or order." (*In re T.W.* (2013) 214 Cal.App.4th 1154, 1161-1162.) "'""The ultimate test is whether it is reasonable for a trier of fact to make the ruling in question in light of the whole record.' [Citation.]" [Citation.]' [Citation.]" (*In re V.M.* (2010) 191 Cal.App.4th 245, 252.)

DCFS contends the language the court adopted in the sustained petition as a basis for jurisdiction was inconsistent with its actual findings that the guardians physically abused G.J. The record does not support this contention. At the end of the jurisdiction hearing, the court summarized the evidence and made statements regarding the credibility of the parties. Although at one point the court stated there was "sufficient information concerning the use of the belt and the inappropriate discipline," the court also acknowledged that the evidence was in significant conflict, and that G.J. was "not very focused and not 100 percent consistent . . . ." We will not construe the court's statements so as to impeach the ultimate order and findings. (See, e.g., *Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 268 [reviewing court looks only to the final findings of fact; trial court's oral comments from the bench may not be used to impeach the order or judgment on appeal].) The reasonable inference from the record as a whole is that the court's findings were what was expressed in the formal ruling—the court found true the modified language that G.J. suffered injuries that would not have occurred but for the failure of the legal guardians to adequately supervise her.

undermines the juvenile court's initial jurisdictional finding or the alleged error will affect the outcome of subsequent proceedings].) In an abundance of caution, we consider the merits of DCFS's cross-appeal.

Indeed, when the court indicated it would adopt this language, DCFS objected: "The court already made a ruling found [*sic*] that the legal guardians were culpable to using physical abuse or inappropriate physical discipline by a belt and that language just says that they sustained injuries while they were suppose[d] to be supervised by the legal guardian." The court implicitly overruled this objection by not responding to it, and by adopting the modified language as indicated. This suggests the court's only ruling was, in fact, that the evidence supported a finding under section 300, subdivision (b). The court thus declined to make findings under section 300, subdivision (a). We have no reason to characterize the court's more informal statements as "findings" so as to impeach the jurisdictional order.

DCFS cannot argue the court's findings under section 300, subdivision (b) were unsupported by substantial evidence. The evidence clearly established, at a minimum, that the guardians' failure to adequately supervise G.J. placed her at risk of harm. Instead, DCFS essentially contends the court's findings did not reflect an alternative characterization of the evidence in which the guardians were more direct actors. But DCFS offers no legal support for the proposition that the juvenile court errs when asserting jurisdiction under fewer than all possible statutory bases. Only one jurisdictional finding is required for the juvenile court to assert dependency jurisdiction over a child. (See *In re Ashley B.* (2011) 202 Cal.App.4th 968, 979 ["As long as there is one unassailable jurisdictional finding, it is immaterial that another might be inappropriate."].) There was evidence that G.J. sustained physical injuries to her face and back, and conflicting evidence as to how she sustained those injuries. There was substantial evidence to support a conclusion that the guardians' failure to adequately supervise G.J. had harmed her and placed her at risk of harm within the meaning of section 300, subdivision (b).

We affirm the juvenile court's jurisdictional order.

14

## DISPOSITION

The juvenile court order is affirmed.

                                        BIGELOW, P.J.

We concur:


        RUBIN, J.


        FLIER, J.