Filed 6/13/24 In re A.O. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re A.O. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. K.O. et al., Defendants and Appellants. | E082737 (Super.Ct.Nos. J288711, J288712) OPINION |
| In re A.O. et al., Persons Coming Under the Juvenile Court Law. | E082434 (Super.Ct.Nos. J288711, J288712) |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. K.O., Defendant and Appellant. | |

1

APPEAL from the Superior Court of San Bernardino County.  Lynn Poncin, Judge.  Affirmed.

Jill Smith, under appointment by the Court of Appeal, for Defendant and Appellant, K.O.

Amy Z. Tobin, under appointment by the Court of Appeal, for Defendant and Appellant, K.R.

Tom Bunton, County Counsel, and David Guardado, Deputy County Counsel, for Plaintiff and Respondent.

## I.  INTRODUCTION

K.O. (Mother) is the mother of D.O., G.R., and A.O.  K.R. (Father) is the presumed father of G.R.  In April 2021, San Bernardino County Children and Family Services (CFS) filed petitions on behalf of all three children pursuant to Welfare and Institutions Code[1] section 300 et seq., alleging that Father's whereabouts were unknown and that Mother was unable to supervise, protect, or provide for the children as the result of her history of domestic violence, mental illness, and unresolved substance abuse.

In June 2022, the juvenile court held a 12-month review hearing, terminated Mother and Father's reunification services, and set the matter for a selection and implementation hearing pursuant to section 366.26.  In February 2023, the trial court held a section 366.26 hearing as to D.O.; found that termination of parental rights would be detrimental to D.O.; and selected an alternative planned permanent living arrangement

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

2

for D.O. However, the selection and implementation hearings for G.R. and A.O. were continued to permit CFS to address unresolved issues related to the Indian Child Welfare Act of 1978 (ICWA; 25 U.S.C. § 1901 et seq.).

In June 2023, Mother filed petitions pursuant to section 388, requesting the court reinstate reunification services and increase visitation with respect to all three children. The juvenile court summarily denied Mother's petitions without conducting an evidentiary hearing, and we affirmed the juvenile court's orders on appeal. (*In re A.O.* (Apr. 16, 2024) E081665.)

In September 2023, Mother filed another petition pursuant to section 388, again requesting the court reinstate reunification services for six months as to all three children or, alternatively, return the children to her custody. The juvenile court held a hearing pursuant to California Rules of Court, rule 5.570(f)(2) to permit the parties to argue whether a full evidentiary hearing was warranted and granted the request for reinstatement of reunification services as to D.O., but it denied the request as to G.R. and A.O. without a full evidentiary hearing. In November 2023, the juvenile court held a contested hearing pursuant to section 366.26 and terminated Mother's and Father's parental rights as to G.R. and A.O.

Mother appeals from the order denying her second section 388 petition and the order terminating her parental rights as to G.R. and A.O. Specifically, Mother argues that (1) the trial court erred in denying her section 388 petition because it considered facts set forth in interim reports submitted by CFS; (2) the trial court erred in denying her section 388 petition without a full evidentiary hearing; and (3) to the extent the trial court erred in

3

denying her section 388 petition, the order terminating parental rights must also be reversed.  Father appeals from the order terminating his parental rights as to G.R., arguing only that the order must be reversed as to both parents if Mother establishes her right to reversal on appeal.  We affirm the order denying Mother's section 388 petition as well as the order terminating parental rights.

## II.  FACTS AND PROCEDURAL HISTORY[2]

A.  *Detention*, *Jurisdiction*, *and Disposition*

In March 2021, CFS received a referral alleging that Mother had given birth prematurely to A.O. and that both Mother and A.O. had tested positive for amphetamines. After conducting an initial investigation, CFS detained Mother's three children, D.O., G.R., and A.O., and filed petitions pursuant to section 300 et seq. on their behalf. Specifically, CFS alleged that Father's whereabouts were unknown and that Mother was unable to supervise, protect, or provide for her children as the result of her history of domestic violence, mental illness, and unresolved substance abuse.

According to the detention report, a social worker confirmed with the hospital that A.O. had tested positive for amphetamines and methamphetamines at birth and required medical care in the neonatal intensive care unit.  Mother was interviewed and admitted the following:  (1) she was currently using illicit drugs; (2) she started using illicit drugs beginning at 12 years of age; and (3) she had a complicated history of addiction involving

---

[2]  Because Father makes no independent claim of error with respect to the termination of his parental rights, we summarize only the facts relevant to Mother's claims of error.

4

multiple periods of sobriety followed by relapses. Mother stated that her longest period of sobriety was three years, but she relapsed after the birth of her second child. Additionally, Mother admitted that D.O. had previously been removed from her care for a period of time as the result of domestic violence. Finally, Mother acknowledged that she required medication to address multiple diagnosed mental health issues,[3] but she was not concerned with simultaneously using medication and illicit drugs. After the children were detained, the juvenile court was also informed that Father was incarcerated in state prison in Colorado.

In August 2021, the juvenile court held a jurisdictional and dispositional hearing; found Father to be the presumed father of G.R.; sustained allegations that Father had a history of domestic violence, unresolved substance abuse issues, and lacked the ability to care for G.R.; sustained allegations that Mother had a history of domestic violence, unresolved substance abuse issues, and mental health issues requiring treatment; and ordered the children formally removed from Mother's and Father's custody.

B. *Circumstances Leading to Termination of Reunification Services*

CFS filed a six-month review report in February 2022. At the time, Mother did not have stable housing or employment. Mother had been ordered to participate in individual counseling, parenting education, a domestic violence program, an outpatient substance abuse program, and periodic alcohol/drug testing. While Mother had made significant progress in individual counseling, completing seven out of eight sessions, she

---

[3] Mother reported that she suffered from anxiety, post-partum depression, post-traumatic stress disorder, and depression.

missed her last session and had yet to complete it. Additionally, Mother completed only three of 12 assigned domestic violence classes, failed to undergo substance abuse treatment, tested positive for illicit substances on four different occasions during random drug tests, and failed to submit to drug testing on 14 other occasions. Mother did not appear at the six-month review hearing, and the juvenile court ordered that the children continue as dependent children of the court.

CFS filed a 12-month review report in May 2022. CFS noted that all three children had initially been placed together in May 2021, but D.O. had been living in a separate placement from G.R. and A.O. since September 2021. Mother remained without stable housing or employment and confirmed she had not participated in any additional counseling or domestic violence classes since the six-month review report. Mother also confirmed that she had not started her outpatient substance abuse treatment program. Instead, Mother stated she had been attending narcotics anonymous meetings and expressed the belief that these meetings should be considered a suitable substitute for her court-ordered treatment. CFS reported that Mother failed to appear for random substance abuse testing on an additional four occasions since the last report. Mother did not appear at the 12-month review hearing, and the juvenile court ordered that reunification services with Mother and Father be terminated.

In October 2022, the juvenile court held a hearing pursuant to section 366.26. CFS recommended that the juvenile court terminate parental rights and select a permanent plan of adoption for G.R. and A.O., and further recommended that the juvenile

6

court select an alternative permanent plan for D.O.[4]  In a continued hearing, the juvenile court determined that termination of parental rights as to D.O. would be detrimental and selected an alternative permanent plan for D.O.  However, the section 366.26 hearing was continued as to G.R. and A.O. to permit CFS to address unresolved ICWA issues.

In April 2023, CFS filed an additional information report, notifying the juvenile court that Mother reported she had relocated out of state, given birth to another child, and was now living with family out of state.

C.  *Mother's First Section 388 Petition*

On June 2, 2023, Mother filed three petitions pursuant to section 388 (one for each child) requesting that the juvenile court reinstate reunification services and increase the frequency of visitation with each of her children.  In support of her petition, Mother attested that she had begun individual counseling, parenting education classes, a domestic violence program, and a substance abuse treatment program.  She attached a report indicating that she had tested clean for illicit substances on one occasion in April 2023.  The juvenile court summarily denied the petitions without an evidentiary hearing.  Mother appealed from the summary denial of her section 388 petitions, and this court affirmed the juvenile court's orders on appeal.  (*In re A.O.*, *supra*, E081665.)

D.  *Mother's Second Section 388 Petition*

In September 2023, Mother filed another section 388 petition requesting that the juvenile court return the children to her custody or reinstate reunification services.  In

---

[4]  D.O. was already a teenager at the time and objected to termination of parental rights.

support of her petition, Mother attested that she continued to be engaged in individual counseling, as well as numerous parenting education and domestic violence classes.[5] Mother stated she had successfully completed an educational program involving trauma awareness as well as health equity training. Finally, Mother attested that she had obtained a one-year chip of sobriety after testing negative for controlled substances and attached drug screening test results for the months of February, March, and April of 2023. According to Mother, the requested changes were in the best interest of her children because she was "closely bonded" with them, visited with the children as often as possible, and was fully engaged during her visits. Mother also expressed the belief that she was soon to obtain her own housing through a public assistance program in Colorado; that it would be good for her children to develop a sibling bond with their new half sibling; and that maternal grandmother could act as a support system for the children.

In response to Mother's petition, the juvenile court issued an order directing CFS to prepare a response and setting the matter for a hearing to determine if an evidentiary hearing was warranted. To comply with the juvenile court's order, CFS prepared an interim review report. CFS reported that it conducted an interview with Mother on October 5, 2023, after Mother had an opportunity to consult with counsel to decide whether to voluntarily submit to the interview. In the interview, Mother acknowledged

---

[5] Specifically, Mother stated, "I participate in Celebrate Recovery's Christian Recovery Program . . . ; I serve as a Recovery Coach at Foundations for Life . . . ; I work with a therapist in individual therapy . . . ; Parenting Education at Hilltop Family Resource Center . . . ; Adult Mental Health First Aid through National Council for Mental Wellbeing; and in-home parenting education . . . ."

that (1) her relapses and addiction issues previously hindered her ability to complete reunification services; (2) she had not been sober for the length of time claimed in her petition with respect to some illicit substances;[6] (3) she was not currently submitting to drug testing because it was no longer court-ordered; and (4) she had not completed any substance abuse programs. Additionally, Mother reported that she had stopped taking her prescribed psychotropic medication and had not seen a psychiatric care provider since 2018. Based upon this interview, the social worker concluded that Mother was not currently compliant with her psychiatric medication and had never fully addressed her substance abuse issues.

On October 11, 2023, the juvenile court held a hearing to determine whether to set a formal evidentiary hearing on Mother's section 388 petition. At the outset of the hearing, CFS noted that it was not contesting Mother's request for reinstatement of reunification services as to D.O. As a result, the juvenile court granted the petition as to D.O. without objection from any parties.

With respect to G.R. and A.O., CFS requested the juvenile court accept its interim report into evidence.[7] The juvenile court inquired whether any party had objection to this request, and Mother's counsel expressly stated there was no objection. The juvenile court then permitted the parties to argue the issue of whether it should grant a formal

---

[6] Specifically, Mother reported to the social worker that she had not used methamphetamines for a year, but she had only ceased marijuana use for eight months.

[7] CFS also requested the juvenile court accept into evidence its regular additional information reports filed with the juvenile court pertaining to ICWA compliance and visitation.

evidentiary hearing on the petition. During argument, Mother did not contradict any of the representations in the interim report and, instead, expressly referenced portions of the interim report as evidence in support of her claim that changed circumstances warranted a modification of the juvenile court's prior orders. Mother did not request to testify or to cross-examine the social worker who prepared the report. The juvenile court found that Mother had not met her burden to show a prima facie case of changed circumstances or that her requested changes would be in the best interest of the children and denied Mother's petition.

E. *Termination of Parental Rights and Appeal*

In November 2023, the juvenile court held a contested section 366.26 hearing as to G.R. and A.O. The juvenile court found that both children were adoptable, that parents had not met their burden to show any applicable exceptions to termination of their parental rights, terminated Mother's and Father's parental rights, and selected a permanent plan of adoption for G.R. and A.O. Mother appeals from the order denying her second section 388 petition, and both Mother and Father appeal from the order terminating their parental rights. We ordered the appeals consolidated.

### III. DISCUSSION

A. *Issue Presented, General Legal Principles, and Standard of Review*

While both Mother and Father have appealed from the order terminating parental rights, neither has asserted any independent error with respect to this order on appeal. Instead, Mother has appealed the order terminating her parental rights to maintain her appeal of the order denying her section 388 petition, arguing only that the erroneous

10

denial of her section 388 petition "infects the outcome" of the subsequent selection and implementation hearing such that reversal of the order terminating her parental rights is necessary to permit a new hearing. Likewise, Father asserts no independent error in the order terminating his parental rights, claiming only that reversal of the order as to him would be appropriate if we find error warranting reversal of the order as to Mother. Thus, the issue presented in this appeal is whether the trial court erred in denying Mother's second section 388 petition.

"Section 388 allows a parent to petition to change, modify, or set aside any previous juvenile court order. [Citation.] 'The petitioner has the burden of showing by a preponderance of the evidence (1) that there is new evidence or a change of circumstances *and* (2) that the proposed modification would be in the best interests of the child.' " (*In re J.M.* (2020) 50 Cal.App.5th 833, 845; § 388, subd. (a).) The juvenile court has "four options when presented with a section 388 request to change a prior court order: (1) grant the request because all parties and attorneys agree to the request; (2) summarily deny the request on various grounds, including that the request does not state new evidence or a change of circumstances, or that the proposed change of order does not promote the best interests of the child; (3) grant a hearing on whether the court should grant or deny an evidentiary hearing on the request; and (4) order a hearing because the best interests of the child may be promoted by the request." (*In re Alayah J.* (2017) 9 Cal.App.5th 469, 480.)

On appeal, both parties invoke the legal principles and standard of review applicable to the summary denial of a section 388 petition. However, we observe that in

11

this case, the juvenile court did not summarily deny Mother's petition. Instead, it ordered CFS to prepare a response and set a hearing on whether the court should grant or deny an evidentiary hearing on the petition. While we have found no published decisions setting forth the standard of review applicable to the trial court's denial of a petition after conducting such a hearing, logic dictates that such a decision should be governed by the same standard of review applicable to a summary denial. After all, the hearing contemplated by Rules of Court, rule 5.570(f)(2) is "for the parties to *argue* whether an evidentiary hearing on the petition should be granted or denied." (*Id*., emphasis added.) Thus, the central issue at the time of such a hearing remains whether the allegations of the petition state a prima facie case for relief and should be subject to the same standard of review applicable when a juvenile court makes the determination ex parte.

"We review the juvenile court's summary denial of a section 388 petition for abuse of discretion." (*In re Anthony W.* (2001) 87 Cal.App.4th 246, 250; *In re C.J.W.* (2007) 157 Cal.App.4th 1075, 1079; *In re Samuel A.* (2020) 55 Cal.App.5th 1, 7.)[8] Nevertheless, "[t]he abuse of discretion standard is not a unified standard; the deference it calls for varies according to the aspect of a trial court's ruling under review. The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious." (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711-712,

---

[8] We further observe that, even in cases where the juvenile court proceeds to a full evidentiary hearing on a section 388 petition, an order denying a section 388 petition after such a hearing is reviewed for abuse of discretion. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 316-317.)

12

footnotes omitted; *In re C.B.* (2010) 190 Cal.App.4th 102, 123.)  We proceed to analyze each aspect of the juvenile court's order challenged on appeal, but we find no abuse of discretion warranting reversal.

B.  *Consideration of Interim Reports*

Mother first contends that the juvenile court erred when it considered CFS's interim report as well as additional information reports because doing so constituted a denial of her right to due process.  We deem the issue forfeited on appeal and, even in the absence of forfeiture, would find no error warranting reversal.

1.  Forfeiture

"[A] reviewing court ordinarily will not consider a challenge to a ruling if an objection could have been but was not made in the trial court."  (*In re S.B.* (2004) 32 Cal.4th 1287, 1293.)  "A party forfeits the right to claim error as grounds for reversal on appeal when he or she fails to raise the objection in the trial court. . . .  Forfeiture . . . applies in juvenile dependency litigation and is intended to prevent a party from standing by silently until the conclusion of the proceedings."  (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 221-222; *In re S.F.* (2023) 91 Cal.App.5th 696, 724 ["[A]s a general rule, failure to object in the juvenile court forfeits a parent's right to pursue an issue on appeal."].)  In this case, the juvenile court directly asked the parties whether there was any objection to consideration of the reports at issue at the time of the hearing and all parties expressly stated they did not object.  Given this record, we conclude that Mother has forfeited any claim of error premised upon the trial court's consideration of these reports.

Mother argues that we should deem her counsel's failure to object as ineffective assistance of counsel. However, "[a] parent seeking to establish ineffective assistance of counsel must show both that counsel failed to act in a manner to be expected of a reasonably competent attorney practicing in the field of juvenile dependency law, and that it is ' "reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." ' . . . When a parent seeks to assert ineffective assistance of counsel on direct appeal . . . , appellate courts further limit their review to consider only those claims ' "where 'there simply could be no satisfactory explanation' for trial counsel's action or inaction." ' " (*In re M.F.* (2022) 74 Cal.App.5th 86, 108-109.) In our view, the record clearly discloses at least one satisfactory explanation for trial counsel's decision not to object. During the hearing, Mother's counsel expressly invoked portions of the interim report that counsel believed to be favorable to Mother in arguing that Mother's petition should be granted.[9] The decision to rely on evidence that can be both beneficial and harmful to a client's case is a reasonable trial tactic within the discretion of trial counsel. (*In re Ana C.* (2012) 204 Cal.App.4th 1317, 1330 [decision to call an adverse witness in order to elicit testimony used to challenge statements set in prior reports was reasonable trial tactic]; *People v. Riel* (2000) 22 Cal.4th 1153, 1186 [decision not to object to evidence was reasonable where "counsel could reasonably believe [the evidence] was helpful"].) Thus, at least on this record,

---

[9] Specifically, counsel stated: "There has been a change of circumstances in this case. That's, I think, noted by the special interim report . . . , which acknowledges Mom has addressed or begun to, at least, address the concerns that brought the case before the Court."

14

Mother has not shown her counsel was ineffective by failing to object to consideration of the interim reports.

2. <u>No Error Even in the Absence of Forfeiture</u>

Even in the absence of forfeiture, we would find no denial of due process in the juvenile court's decision to consider the interim review report and the additional information report. "In the context of dependency proceedings, . . . 'due process is not synonymous with full-fledged cross-examination rights. [Citation.] Due process is a flexible concept which depends upon the circumstances and a balancing of various factors. [Citation.]' 'The essential characteristic of due process in the statutory dependency scheme is fairness in the procedure . . . .' " (*In re A.B.* (2022) 79 Cal.App.5th 906, 930; *In re E.S.* (2011) 196 Cal.App.4th 1329, 1340.) " 'In juvenile dependency litigation, due process focuses on the right to notice and the right to be heard.' " (*J.H. v. Superior Court* (2018) 20 Cal.App.5th 530, 536-537; *In re R.F.* (2021) 71 Cal.App.5th 459, 470 [" 'Due process requirements in the context of child dependency litigation have . . . focused principally on the right to a hearing and the right to notice.' "].)[10] Whether a particular procedure meets the constitutional requirements of due process is an issue of law we review de novo. (*A.B.*, *supra*, at p. 925.)

---

[10] We also observe that even in the context of a criminal proceeding, " '[t]he admission of evidence, even if erroneous under state law, results in a due process violation only if it makes the trial *fundamentally unfair*' " (*People v. Tran* (2022) 13 Cal.5th 1169, 1209), and the " 'failure to comply with the state's rule of evidence is neither a necessary nor a sufficient basis' for granting relief on federal due process grounds" (*People v. Albarran* (2007) 149 Cal.App.4th 214, 229).

15

Generally, we see no fundamental unfairness in the juvenile court's request for a response and CFS's preparation of an interim report. Given the unique and ongoing nature of a juvenile dependency case, the juvenile court has express statutory authority to "require the social worker or any other agency to render any periodic reports concerning [dependent children] that the court deems necessary or desirable" (§ 365); and, it is well accepted that in resolving a section 388 petition, " 'the [juvenile] court may consider the entire factual and procedural history of the case' " (*In re N.F.* (2021) 68 Cal.App.5th 112, 120; *In re R.A.* (2021) 61 Cal.App.5th 826, 837).

More importantly, the specific record in this case does not suggest that Mother was denied fair notice or a meaningful opportunity to be heard regarding the interim report or additional information reports she now complains of on appeal. The preparation of a response was specifically requested by the juvenile court in a written order served on all parties weeks prior to the hearing. The only new information furnished in the interim report was a summary of an interview with Mother; the social worker expressly advised Mother that the interview was being conducted for the purpose of preparing a response to Mother's section 388 petition; and Mother expressly stated she would confer with her counsel prior to agreeing to participate in the interview. Thus, the specific circumstances of this case do not suggest that Mother was denied fair notice of the existence, contents, or purpose of the interim report in relation to her section 388 hearing.

Additionally, Mother was present at the hearing on her section 388 petition, did not dispute any representations made in the interim report or additional information reports, made no request to testify in order to clarify any representation in any reports,

16

and made no request to cross-examine the social worker or any other witness with respect to the reports. As such, nothing in the record suggests Mother was denied a meaningful opportunity to address the information provided by CFS in its interim report. Under such circumstances, even if Mother had objected to consideration of the report to preserve the issue on appeal, we would conclude that consideration of the report did not violate due process.

C. *Mother's Petition Failed to Make the Necessary Prima Facie Showing*

We also conclude that Mother's petition did not make a sufficient prima facie showing requiring the juvenile court to hold a full evidentiary hearing. When a section 388 petition is denied without an evidentiary hearing, the juvenile court does not abuse its discretion "if even a liberal interpretation of the proffered evidence of changed circumstances might not justify modifying the order terminating reunification." (*In re Jeremy W.* (1992) 3 Cal.App.4th 1407, 1414.) As we explain, even if we were to disregard the information contained in the interim reports submitted by CFS, the allegations and evidence submitted with Mother's petition were not sufficient to make a prima facie showing that changed circumstances or the best interests of the children warranted modification of the prior order terminating reunification services.

With respect to changed circumstances, Mother's petition alleged she was now participating in a recovery group, working as a recovery coach, participating in individual therapy, and participating in various mental health and parenting education courses. However, the record in this case shows that Mother had previously enrolled and participated to some degree in numerous services prior to termination of reunification

17

services. It was not Mother's unwillingness to participate in services but her inability to commit to and successfully complete services that resulted in the orders terminating reunification services. On this point, Mother's declaration identified only two successfully completed programs. Further, the successfully completed programs were related to trauma awareness and health equity training, and not substance abuse, which was the primary reason for the dependency. Thus, the fact that Mother was actively participating in counseling, classes, and treatment, but only able to successfully complete two courses at the time of her petition, did not show a material change in the circumstances that already existed at the time the juvenile court terminated reunification services.

On appeal, Mother emphasizes that evidence attached to her petition showed that (1) she had transitioned to a sober living home as of May 2023; (2) she had been engaged in individual therapy since May; (3) she began working as a recovery coach in July; (4) she has been working with an in-home parenting provider since April; and (5) she had been regularly participating in group therapy. However, almost all of the evidence involved a period of approximately five months prior to the filing of her section 388 petition. Likewise, Mother attached only three drug screening tests covering a limited, three-month period in support of her assertion that she was now sober from all controlled substances, the last of which was also done approximately five months prior to the filing of the petition.

In the context of Mother's long history of substance abuse with repeated periods of sobriety and relapse, the period addressed by the allegations of her petition was

18

relatively brief. While such evidence certainly supports an inference of changing circumstances, courts faced with similar facts have concluded that such a showing is not enough to show that circumstances have changed sufficiently to compel the juvenile court to hold an evidentiary hearing on a section 388 petition. (*In re Ernesto R.* (2014) 230 Cal.App.4th 219, 223 [Where a parent "has a history of drug relapses, is in the early stages of recovery, and is still addressing a chronic substance abuse problem," the parent's "recent sobriety reflects 'changing,' not changed circumstances" and "is not a substantial change in circumstances."]; *In re C.J.W.* (2007) 157 Cal.App.4th 1075, 1081 [Parents did not demonstrate changed circumstances where "both have extensive histories of drug use," and "[t]heir recent efforts at rehabilitation were only three months old . . . ."].) Thus, even setting aside CFS's interim review report,[11] the allegations and evidence submitted with Mother's petition did not show changed circumstances requiring the juvenile court to order an evidentiary hearing.

With respect to the best interests of the children, Mother's petition made a single, conclusory statement that she was "closely bonded" with the children, evidenced by the

---

[11] According to CFS's interim review report, Mother subsequently admitted that she had not actually completed any substance abuse programs; was no longer submitting to drug testing; did not intend to submit to any drug testing unless required for reunification; was no longer compliant with her psychotropic medication regimen; and had not actually been sober from all controlled substances for the period claimed in her petition, admitting that she had engaged in marijuana use within the year she claimed to have been sober.

fact that the children enjoyed visits with Mother.[12]  However, "[a]s to the best interests element, after the court has bypassed or terminated reunification services and set the matter for a section 366.26. hearing, the focus of the case shifts from the parents' interest in the care, custody, and companionship of the child to the needs of the child for permanency and stability.  [Citations.]  A court entertaining a section 388 petition at this stage in the proceedings 'must recognize this shift of focus in determining the ultimate question before it, that is, the best interest of the child.' "  (*In re N.F.*, *supra*, 68 Cal.App.5th at p. 121; *In re J.C.* (2014) 226 Cal.App.4th 503, 526-527.)  After termination of reunification services, preservation of the biological parent-child relationship is no longer in the best interest of the child where it conflicts with a child's interest in permanency and stability.  (*In re J.C.*, at pp. 526-527.)  Thus, Mother's assertion of a close bond with the children, without any suggestion of how preservation of the bond would advance the children's ultimate interest in permanency and stability, did not show that reinstatement of reunification services would be in the children's best interest.

On appeal, Mother suggests that because the juvenile court reinstated Mother's reunification services as to D.O., it was also in G.R. and A.O.'s best interest to reinstate Mother's reunification services as to them because doing so would preserve sibling bonds.  However, by the time of the hearing on Mother's section 388 petition, G.R and

---

[12]  Mother also alluded to future, hypothetical circumstances, which had yet to materialize, such as her expectation of being offered subsidized housing in the near future and her belief that the children could form a beneficial relationship with their one-year-old half sibling.

A.O had been placed separately from D.O. for more than two years. The last time they lived with D.O., G.R. and A.O. were three years old and six months old, respectively. Thus, the circumstances of this case do not suggest that the nature of any relationship G.R. and A.O. had with D.O. was the type that would outweigh G.R. and A.O.'s interest in permanency and stability. (See *In re Celine R.* (2003) 31 Cal.4th 45, 61 [Where dependent children were "three years old . . . and less than two years old" when placed separately from their older sibling and "had been living separately from [the older sibling] for a year and a half," "the conclusion was virtually compelled" that any sibling bonds "should not prevent them from gaining a permanent home through adoption."].)

Because the evidence proffered in support of Mother's section 388 petition would not support modification of a prior order even if accepted as true, such evidence does not show a prima facie case for relief, and the juvenile court did not abuse its discretion by denying the petition without proceeding to a full evidentiary hearing. Thus, Mother has not met her burden on appeal to show an abuse of discretion warranting reversal of the juvenile court's order denying her section 388 petition. Further, because Mother and Father have not asserted any independent claim of error with respect to the order terminating parental rights, we also affirm the juvenile court's order terminating parental rights.

## IV.  DISPOSITION

The orders are affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS _____

J.

We concur:

MILLER _____

Acting P. J.

MENETREZ _____

J.